Affirmed as Modified and Memorandum Opinion filed May 1, 2003









Affirmed as Modified and Memorandum Opinion filed May
1, 2003.

 




 
 
 
  
 
 
 




In The

 

Fourteenth Court of
Appeals

____________

 

NOS. 14-02-00410-CR and

   14-02-00411-CR

____________

 

LENNIS DAVID YATES, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



 

On Appeal from the 228th District Court

Harris County, Texas

Trial Court Cause No. 899,397 and 899,398

 



 

M E M O R A N D U M   
O P I N I O N








A jury found appellant Lennis David Yates guilty of two
charges of sexual assault.  See Tex. Pen. Code Ann. ' 22.011(a)(1)(A) (Vernon Supp.
2003).  Punishment for each offense was
enhanced and assessed at 27 years= confinement in the Institutional
Division of the Texas Department of Criminal Justice.  The trial court ordered the sentences to be
served consecutively.  In five points of
error, appellant asserts he is entitled to a new trial, or, alternatively,
entitled to concurrent sentences.  We
modify the trial court=s judgment and affirm it as modified.  See Tex.
R. App P. 43.2(b).

PROCEDURAL AND FACTUAL HISTORY

In September, 2001, two sexual assaults were reported to
Houston police.  The first, occurring on
or about September 5, 2001, was reported by L.M., a 34-year-old prostitute; the
second, occurring on or about September 12, 2001, was reported by B.B., a 37-year-old
prostitute.  At the time of the assaultsCwhich involved aberrant sexual
behaviorCboth women were located in the 4300
block of Telephone Road in Houston.

According to L.M.=s and B.B.=s reports, their assailant was an
attractive white male, 33 to 38 years old, weighing between 160 and 170 lbs.,
with blonde hair and a “surfer-type” haircut. 
He told one of the women his name was “Bobby,” that he was from Maine,
and that he was married.

According to the women, their assailant stopped them on the
street, called them over to his truck, implied he was hiring them for
consensual sex, and then drove them to nearby locations where the assaults took
place.  In both instances, the assailant
drove a red Peterbilt truck driving “bobtail.”[1]   

Each woman described her assault similarly.  Each reported she was made to take off her
clothes; was handcuffed at the wrists and ankles; was gagged with a sock or
something similar; was taped or tied across the mouth; and was threatened with
gang rape.  Additionally, each feared for
her life, was made to endure forceful insertion of a dildo or other large
object into her anus and/or vagina, and was verbally and physically
abused.  Neither woman consented to the
behavior. 








L.M. reported she was shocked or electrocuted with a device
that made her “feel like she was being punched in the side.”  B.B. reported she was whipped, beaten on the
side with fists, and had a rib broken. 
Additionally, B.B. testified that her assailant placed “clamps” on her
breasts, tied the clamps together, and pulled on them forcefully.  

After the assaults, both women were returned to the motel
where they were living.  Neither was
paid.  Both women shared their
experiences with acquaintances and with the police; both exhibited physical
signs of having been handcuffed and/or whipped.

During the early morning hours of October 6, 2001, Officer
R.J. Manzanales of the Houston Police Department was on patrol on Telephone
Road in southeast Houston when he was flagged down by a woman he believed to be
a prostitute.  The woman told Manzanales
a truck driver in a red Peterbilt truck had just stopped, attempted to “pick
her up,” and was traveling northbound on Telephone Road.  She believed the driver was the same Atruck driver@ wanted by the police for the
assaults on L.M. and B.B.  

During his department=s daily “roll call” sessionsCheld immediately before the beginning
of each day=s shiftCManzanales had learned of B.B.=s and L.M.=s alleged assaults by a blonde man
driving a red Peterbilt truck without a trailer.  Proceeding in the direction the woman
indicated, Manzanales observed a vehicle coming toward him matching the
description given by the woman and by L.M. and B.B.  It was a red Peterbilt truck being driven “bobtail,”
and had no rear license plate.  The man
driving the truck matched the descriptions provided by L.M. and B.B..  The vehicle had turned around and was
traveling southbound on Telephone Road.  

After he stopped the truck, Manzanales observed appellant as
the lone occupant.  He informed appellant
he was being stopped for failure to display a rear license plate.  He also informed appellant he fit the
description of a person who had been terrorizing prostitutes in the area.  Manzanales asked appellant for his driver=s license, ran a “standard warrant
check” on it, called for back-up, and contacted (1) his supervisor to learn
more about the sexual assault suspect and his truck, and (2) his department=s sexual assault unit to inform them
he had stopped a person matching the description of B.B.=s and L.M.=s assailant.  








After conversing with his supervisor and unit representative,
Manzanales discovered the rape suspect was from Maine and drove a truck
outfitted with a bug guard.  Manzanales
observed a bug guard on appellant=s truck and asked appellant where he
was from. Appellant informed Manzanales he was from Maine.

About this time, another officer arrived.  The two officers asked appellant, who had
exited his vehicle, if he would consent to a search of his truck.  Although appellant initially said “no” to the
request, he re-entered the truck and, after a period of time, exited and orally
gave permission for the search.  He
refused to sign a consent form.  

While it was Manzanales= impression that appellant spent the
time inside his truck searching for incriminating evidence, appellant asserts
he sat in his truck to smoke a cigarette. 
In any case, appellant gave oral permission to have officers search his
truck and Manzanales placed him in the back of one of the patrol cars.  A brief search of appellant=s truck revealed a whip, two sets of handcuffs,
a black dildo, two rolls of tape, and miscellaneous pornography.  After appellant was taken to the police
station and his truck towed, a further search revealed alligator clips and a
rope matching the description of rope used to tie up one of the complainants.

At the police station, appellant was met by Officer Dannye
Morgan, who took a photograph of appellant and placed the photograph into a
photospread.  Morgan showed the
photospread to both complainants, who positively identified appellant as their
assailant.

Upon receipt of complainants= positive identifications, Morgan met
with appellant, informed him of his rights, informed him of the accusations
made against him, and asked if appellant wished to make a statement.  Although appellant provided no formal
statement, he told Morgan he had frequented the “whores on Telephone Road” and
engaged in “bondage” situations.








Morgan asked appellant to provide a saliva sample.  Although appellant signed a “consent to
search” form so that a sample of his saliva could be obtained, he informed
Morgan “it would not do the officer any good.” 
When asked why this was so, appellant stated “he had cleaned the truck
out real good.”  

Two charges of sexual assault were filed against
appellant.  His indictments also included
an enhancement paragraph alleging appellant had previously committed aggravated
assault.  At trial,  the jury found appellant guilty of both
sexual assaults and made a finding of true to each enhancement.  It assessed punishment at 27 years= confinement in the Institutional Division
of the Texas Department of Criminal Justice for each offense.  

The trial court ordered the sentences to run
consecutively.  Appellant=s written notice of appeal was timely
filed. 

ISSUES ON APPEAL

Appellant asserts five points of error, contending (1) the
trial court erred in not suppressing evidence seized in the search of his
truck; (2) the trial court erred in not granting appellant a new trial in light
of new evidence showing the original stop of appellant=s truck to be unlawful; (3) the trial
court erred in not granting a new trial in light of evidence showing appellant
could not have committed the offense as described by complainant; (4) the trial
court erred in failing to instruct the jury on “prostitution” as an alternative
offense to “sexual assault”; and (5) the trial court erred in cumulating his
sentences.  

I.   DENIAL OF
APPELLANT=S MOTION TO SUPPRESS








In his first point of error, appellant asserts the trial
court erred in not suppressing the evidence seized from his truck because he
was not lawfully stopped.  Appellant=s argument is based on a letter from
the Texas Department of Transportation interpreting section 502.404(a) of the
Texas Transportation Code.[2]  See Tex.
Transp. Code Ann. ' 502.404(a) (Vernon 1999). 

A.        Standard of
Review

We review a trial court=s motion to suppress under an
abuse-of-discretion standard of review.  Oles
v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999); Dang v. State, No.
14-00-00560-CR, CS.W.3d.C, 2002 WL 31426674, at *3 (Tex. App.CHouston [14th Dist.] Oct. 31, 2002,
no. pet. h.).   There is an abuse of
discretion when the ruling is so clearly wrong as to be outside that zone
within which reasonable persons might disagree. 
Cantu v. State, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992).  








We afford almost total deference to a trial court=s determination of the historical
facts that the record supports,[3]
especially when the trial court=s fact findings are based upon an evaluation of credibility
and demeanor.  State v. Ross, 32
S.W.3d 853, 856 (Tex. Crim. App. 2000). 
We afford the same amount of deference to the trial court=s ruling on mixed questions of law
and fact if the resolution of those questions turns on an evaluation of
credibility and demeanor.  Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State,
955 S.W.2d 85, 88B80 (Tex. Crim. App. 1997). 
We review de novo the trial court=s application of law to those facts in
the determination of reasonable suspicion and probable cause.  Id. at 87B88. 
See also Carmouche, 10 S.W.3d at 327; Manzi v. State, 56
S.W.3d 710, 716 (Tex. App.CHouston [14th Dist.] 2001, pet. granted) aff’d
88 S.W.3d 240 (appellate court reviews de novo a trial court=s application of law of search and
seizure).

In determining whether the trial court=s ruling on a motion to suppress is
supported by the record, we generally consider only the evidence adduced at the
hearing on the motion unless the suppression issues have been consensually
relitigated by the parties during the trial on the merits.  Rachal v. State, 917 S.W.2d 799, 809 (Tex.
Crim. App. 1996); Dang, 2002 WL 31426674, at *3.  Because the parties in this case did not
consensually relitigate the suppression issues at trial, we will examine only
the evidence before the trial court at the suppression hearing.

B.        Discussion 

Appellant argues on appeal that the trial court erred in
failing to suppress evidence seized from appellant=s truck after his traffic stop.  He asserts the evidence was illegally seized
as a result of an unlawful search because (1) Manzanales= initial stop was improper and lacked
probable cause, and (2) appellant did not consent to be searched.  Appellant=s arguments are without merit.

1.         Evidence supports a finding appellant was lawfully stopped.








The Fourth Amendment to the United States Constitution
provides, in part, that “the right of people to be secure in their persons,
houses, papers, and effects, against unreasonable searches and seizures, shall
not be violated.”  U.S. Const. Amend. IV.  Warrantless searches are per se unreasonable
unless they fall into a recognized exception. 
Hulit v. State, 982 S.W.2d 431, 434 (Tex. Crim. App. 1998).[4]

One recognized exception occurs when a police officer has “reasonable
suspicion” criminal activity is afoot.  Terry
v. Ohio, 392 U.S.1, 29, 88 S. Ct. 1868, 1884 (1968); Davis v. State,
947 S.W.2d 240, 244 (Tex. Crim. App. 1997); James v. State, CS.W.3dC, 2003 WL 69576, at *4 (Tex. App.CFort Worth 2003, no pet. h.).  Reasonable suspicion exists if the officer
has “specific articulable facts” that, when combined with rational inferences
from those facts, would lead him to reasonably suspect that a particular person
has engaged in, or is, or soon will be, engaging in illegal conduct.  Id. 
See also Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001);
Townsend v. State, 813 S.W.2d 181, 185 (Tex. App.CHouston [14th Dist.] 1991, pet. ref=d). 
The information provoking an officer=s reasonable suspicion need not be
based on the officer=s own personal observations, but may be based on an informant=s tip which bears sufficient “indicia
of reliability” to justify a stop.  Carmouche,
10 S.W.3d at 328.  Reasonable suspicion
is determined by considering the “totality of the circumstances.”  Woods v. State, 956 S.W.2d 33, 38 (Tex.
Crim. App. 1997).  The same standards for
reasonable suspicion apply whether the person detained is a pedestrian or
occupant of an automobile.  Carmouche,
10 S.W.3d at 328.  Thus, reasonable
suspicion applies to traffic stops.  U.S.
v. Brignoni-Ponce, 422 U.S. 873, 880B81, 95 S. Ct. 2574, 2574 (1975). 








Here, the trial court heard appellant=s motion to suppress based on
appellant=s motion and affidavits from both
sides.[5]  See Tex.
Crim. P. Code Ann. art. 28.01, ' 1(6) (Vernon 1989).  Appellant offered his own affidavit; the
State offered the affidavit of Manzanales. 
  Manzanales= affidavit recited several “specific
articulable facts” to support a finding that Manzanales had reasonable
suspicion to stop appellant: (1) Manzanales had heard reports of a person
driving a red Peterbilt truck assaulting prostitutes in the Telephone Road
area; (2) Manzanales was on Telephone Road; (3) Manzanales was flagged down by
a female he believed to be a prostitute; (4) the female stated she was aware of
a person in a red Peterbilt truck assaulting prostitutes; (5) the female stated
a truck and driver matching the assailant=s description had just stopped,
attempted to “pick her up,” and was driving northbound on Telephone Road; and
(6) Manzanales noted a red Peterbilt truck that had reversed its direction to
travel southbound on Telephone Road.

Finding this evidence to be sufficient proof to support
reasonable suspicion, we conclude Manzanales= stop of appellant was lawful.  Because Manzanales= stop was lawful, the trial court=s denial of appellant=s motion to suppress on this basis
was proper.

2.         Evidence supports a finding appellant gave consent to be
searched. 

The Fourth Amendment guarantees to every individual the right
to be free from unreasonable searches and seizures.  U.S.
Const. Amend. IV.  However, a
search made after voluntary consent is not unreasonable.  Kolb v. State, 532 S.W.2d 87, 89 (Tex.
Crim. App. 1976); Manzi, 56 S.W.3d at 716.  

To determine voluntariness, the trial court must look at the
totality of the circumstances surrounding the statement of consent. Id.;
Lackey v. State, 638 S.W.2d 439, 447 (Tex. Crim. App. 1982).  The State is required to prove the
voluntariness of consent by clear and convincing evidence.  State v. Ibarra, 953 S.W.2d 242, 243 (Tex.
Crim. App. 1997; Manzi, 56 S.W.3d at 716.








Among the factors to be considered in determining voluntariness
are whether the consenting person is in custody; whether he or she was arrested
at gunpoint; and whether the person was informed that he or she did not have to
consent.  Laney v. State, 76
S.W.3d 524, 532 (Tex. App.CHouston [14th Dist.] 2002, pet. granted).  Other relevant factors include the age,
education, and intelligence of the accused; the constitutional advice given to
the accused; the length of the detention; the repetitiveness of the questioning;
and the use of physical punishment.  Id.;
Reasor v. State, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000).[6]  

Here, the trial court considered two affidavits at appellant=s suppression hearing.  Appellant=s affidavit stated that appellant
never gave consentCoral or writtenCfor his truck to be searched;
Manzanales= affidavit stated that while
appellant declined to sign a written consent form and initially declined to
allow officers to search his truck, appellant changed his mind regarding the
search after being allowed to re-enter his vehicle.

Interpreting the affidavits in the light most favorable to
the trial court=s ruling, we conclude appellant voluntarily consented to be
searched.  See Maniz, 56 S.W.3d at
717.  First, appellant=s and Manzanales= accounts of the stop and search are
virtually identical except for the consent issue.  Next, appellant=s initial denial of the search and
refusal to sign a consent form indicate appellant was fully aware of his right
to refuse.  Finally, evidence that
appellant re-entered his truck and gave consent only after having had the
opportunity to be inside his vehicle supports the conclusion appellant believed
no incriminating evidence would be found. 








The fact that appellant initially refused to give police
consent, while a factor to be considered in evaluating the voluntariness of his
later decision to give consent, is not determinative.  Id. at 718.  See also U. S. v. Pulvano, 629 F. 2d 1151,
1157 (5th Cir. 1980) (finding defendant who “refuses to cooperate with police
on the grounds that he is constitutionally permitted to do so, may change his
mind at some later time and decide to voluntarily cooperate.”).  Neither is failure of police to obtain a written
consent to search.  Maniz, 56
S.W.3d at 719 (“It is well established . . . that a valid consent to search may
be oral.”); U.S. v. Gomez-Diaz, 712 F.2d 949, 952 (5th Cir. 1983) (defendant
who verbally agreed to x-ray procedure, but refused to sign written consent
form, nevertheless gave consent). 
Because we find clear and convincing evidence to support (1) a finding
that appellant was lawfully stopped, and (2) a finding that appellant
voluntarily consented to be searched, we conclude the trial court did not err
when it denied appellant=s motion to suppress. 
Accordingly, we overrule appellant=s first point of error.

II.   DENIAL OF
APPELLANT=S MOTION FOR NEW TRIAL

 

In his second and third points of error, appellant asserts
the trial court erred in not granting him a new trial because (1) new evidence
suggests there was no valid basis for the State=s initial traffic stop; and (2)
evidence exists that establishes appellant could not have committed the offense
against L.M. as complainant described it. 
We disagree.

A.        Standard of
Review

A trial court has wide discretion in granting a new trial,
and the trial court=s discretion will not be disturbed on appeal absent a showing
of a manifest abuse of discretion.  Champion
Int’l Corp. v. Twelfth Court of Appeals, 762 S.W.2d 898, 899 (Tex.
1988);  Allied Rent-All, Inc. v. Int’l
Rental Ins., 764 S.W.2d 11, 13 (Tex. App.CHouston [14th Dist.] 1988, no
writ.).  

This standard of review also applies to trial court decisions
based upon newly-discovered evidence.  Keeter
v. State, 74 S.W.3d 31, 37 (Tex. Crim. App. 2002).  Motions for new trial on grounds of
newly-discovered evidence are disfavored by the courts and viewed with great
caution.  Margraves v. State, 56
S.W.3d 673, 685 (Tex. App.CHouston [14th Dist.] 2001, no pet.).








B.        Discussion

To obtain a new trial on the basis of newly discovered
evidence, a defendant must show (1) the new evidence was unknown to defendant
at the time of trial; (2) failure to discover the evidence was not due to
defendant=s lack of diligence; (3) the evidence
has a materiality that probably would cause a different result in another
trial; and (4) the evidence is admissible and not merely cumulative,
corroborative, collateral or impeaching. 
Id.; Moore v. State, 882 S.W.2d 844, 849 (Tex. Crim. App.
1994).  Unless the defendant satisfies
all four requirements, he is not entitled to a new trial. Margraves, 56
S.W.3d at 685.

Neither of the two pieces of evidence upon which appellant
relies for a new trial meets these four criteria.

1.         Department of
Transportation=s “statute interpretation” letter

In his second point of error, appellant asserts the
recently-discovered communication from the Texas Department of TransportationCauthoritatively construing section
502.404 of the Texas Transportation CodeCshows appellant=s initial traffic violation was not
in fact an offense.[7]  Because it was not an offense, appellant
asserts, appellant=s stop was unlawful and evidence seized as a result of it was
inadmissible.  We disagree.








As determined in Part I(B)(1) above, there is no requirement
a traffic regulation must be violated in order for an officer to have
reasonable suspicion to stop a vehicle.  Cook
v. State, 63 S.W.3d 924, 929 (Tex. App.CHouston [14th Dist.] 2002, no
pet.).  Indeed, Manzanales had reasonable
suspicion to stop appellant even without the traffic violation; any evidence
suggesting appellant committed no traffic violation, therefore, is
immaterial.  Immaterial evidence fails to
satisfy the third requirement for obtaining a new trial on the basis of new-found
evidence.  See Margraves, 56
S.W.3d at 685 (to form the basis for a new trial, new-found evidence must have
a materiality that probably would cause a different result at trial).[8]

Because appellant=s letter fails to meet all four
criteria required to obtain a new trial on the basis of newly-discovered
evidence, we hold the trial court did not err in denying appellant=s motion for new trial on the basis
of appellant=s letter from the Department of
Transportation.  Accordingly, we overrule
appellant=s second point of error.

2.         Appellant’s
alibi witness

In his third point of error, appellant claims the trial court
erred when it denied his motion for new trial because an alibi witnessCLatoya JohnsonCwas willing to testify she was in
Dallas with appellant making deliveries on the morning of September 5,
2001.  Because appellant has an alibi for
the date of the alleged assault against L.M., appellant claims, the assault
against L.M. could not possibly have been “committed . . . as it was described
by [complainant].”  This argument fails
for three reasons.

First, appellant cites no authority to support his conclusory
statement that Johnson=s testimony necessarily requires a new trial; thus, he
presents nothing for our review.  See
Tex. R. App. P. 38.1(h)
(requiring brief to contain a “clear and concise argument for the contentions
made, with appropriate citations to authority and to the record.”).  See also Jensen v. State, 66 S.W.3d
528, 534 n.3 (Tex. App.CHouston [14th Dist.] 2002, no pet.).








Second, if appellant traveled with Johnson the morning of
September 5, certainly he was aware of that fact by the time his case came to
trial.  He himself could have solicited
Johnson=s testimony at trial.  See Sawyer v. State, 778 S.W.2d 541,
545 (Tex. App.CCorpus Christi 1989, pet. ref=d) (holding that when a defendant
knows about a witness and chooses not to inform his attorney, a trial court
does not abuse its discretion in overruling a motion for new trial based on a
claim of newly discovered evidence). 

Third, appellant=s alibi evidence does not disprove
the fact that appellant sexually assaulted complainant; it merely suggests the
assault did not occur on September 5. 
Because L.M. testified appellant assaulted her “around the beginning of
September” and appellant=s charging instrument alleged he committed the offense “on or
about” September 5, the State was not required to prove appellant=s sexual assault occurred on
September 5Conly that it occurred prior to
presentment of the charging instrument and within the limitations period.  See Schoenbauer v. State, 85 S.W.3d
400, 405 (Tex. App.CTyler 2002, no pet.); Sledge v. State, 953 S.W.2d 253,
256 (Tex. Crim. App. 1997); Moore v. State, 4 S.W.3d 269, 277B78 (Tex. App.CHouston [14th Dist.] 1999, no pet.). 

Because appellant cites no authority to suggest the State had
a duty to call Johnson as a witness, because appellant himself could have
called Johnson to testify, and because the State was not required to prove L.M.=s sexual assault occurred on
September 5, we conclude the trial court did not err when it denied appellant=s motion for new trial based on
appellant=s alibi witness.[9]  

Accordingly, we overrule appellant=s third point of error.

III.   TRIAL COURT=S FAILURE TO INSTRUCT

JURY ON APROSTITUTION@

 








In his fourth point of error, appellant asserts the trial
court erred in not instructing the jury on the possibility of finding appellant
guilty of the alternative offense of Aprostitution.@ 
Because prostitution, as defined in the Texas Penal Code, varies from
sexual assault only with regard to the level of consent given, appellant
argues, the trial court should have included the lesser offense of prostitution
in its charge to the jury.[10]  

Appellant failed to preserve this point of error for review,
however.  As a prerequisite to presenting
a complaint for appellate review, the record must show that (1) the complaint
was made to the trial court by a timely request, objection or motion, and (2)
the trial court ruled on the request, objection, or motionCeither expressly or implicitlyCor refused to rule on it and the
complaining party objected to the refusal. 
Tex. R. App. P. 33.1(a)(1)
and (2).

Here, appellant made no request for inclusion of a “prostitution”
instruction to the jury; he did not object when the trial court failed to
include such an instruction; and he acknowledges prostitution is not a “lesser
included offense” of sexual assault.[11]  Therefore, appellant has failed to preserve
this point of error for appellate review. 
See id.; Butler v. State, 872 S.W.2d 227, 236 (Tex. Crim. App.
1994).  








Despite this failure, appellant nevertheless asserts he is
entitled to an instruction on prostitution because “there are constitutional
reasons why such an instruction should be given.”  See Apprendi v. New. Jersey, 530 U.S.
466, 490, 120 S. Ct. 2348, 2363 (2000) (“It is unconstitutional for a
legislature to remove from the jury the assessment of facts that increase the
prescribed range of penalties to which a criminal defendant is exposed.”); Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh’g) (finding reversal is required, even in cases where
no proper objection was made at trial to a jury instruction, where appellant
has “not had a fair and impartial trial”). 
Because “sexual assault” is a felony and “prostitution” a misdemeanor,
he argues, a dramatic difference exists between the two offenses= punishments.[12]  Consequently, the issue of consent becomes
pivotal to the amount of time served and should be submitted to the jury.  

Appellant=s argument is erroneous because the issue of consent was
submitted to the jury.  Indeed, in order
to convict appellant of sexual assault the jury necessarily had to find
appellant (1) intentionally or knowingly, (2) caused the penetration of the
anus or female sexual organ of another person by any means, (3) without that
person=s consent.  See Tex.
Pen. Code Ann. ' 22.011(a)(1)(A) (Vernon Supp. 2003).[13]
  

Because appellant waived his objection to the trial court=s failure to include a “prostitution”
instructionCand because no constitutional reason
compels us to require such an instructionCwe overrule appellant=s fourth point of error. 

IV.   CUMULATION OF
SENTENCES

In his fifth and final point of error, appellant asserts the
trial court erred in cumulating his sentences rather than ordering appellant to
serve his sentences concurrently.  We
agree.








When an accused is found guilty of more than one offense
arising out of the “same criminal episode” prosecuted in a single criminal
action, the sentence for each offense “shall run concurrently.”  Tex.
Pen. Code Ann. ' 3.03(a) (Vernon Supp. 2003); Fernandez v. State, 814
S.W.2d 417, 420 (Tex. App.CHouston [14th Dist.] 1991, pet. granted), aff=d 832 S.W.2d 600.[14]  “Criminal episode” means the commission of
two or more offenses, regardless of whether the harm is directed toward or
inflicted upon more than one person, where “the offenses are the repeated
commission of the same or similar offenses.” 
Tex. Pen. Code Ann. ' 3.01(2) (Vernon 1994).

Here, appellant was found guilty of committing the same
offenseCsexual assaultC against two different
complainants.   His sentences, therefore,
should run concurrently.

The trial court, however, ordered cumulative sentences.  This was improper.[15]  We therefore sustain appellant=s fifth point of error and modify
appellant=s sentence accordingly.

CONCLUSION

Finding
no abuse of discretion or error except the trial court=s application of cumulative
sentences, we modify the lower court=s judgment below and affirm this
judgment as modified.

 

 

/s/        John S. Anderson

Justice








 

Judgment rendered
and Memorandum Opinion filed May 1, 2003.

Panel consists of
Justices Yates, Anderson, and Fowler.

Do Not PublishCTex. R. App.
P. 47.2(b).











[1]  The tractor
portion of a tractor-trailer rig is driving Abobtail@ when it is traveling without a trailer. 





[2]  Section
502.404(a) of the Texas Transportation Code provides that a person Acommits an offense if the person operates on a public
highway during a registration period a . . . commercial motor vehicle that does
not display two license plates, at the front and rear of the vehicle . . .@   Tex. Transp. Code Ann. ' 502.404(a) (Vernon 1999).  However, in a 1999 letter from James Powell,
operations branch manager of the Vehicle Titles and Registration Division of
the Texas Department of Transportation, to Mark Rogers of the Inspection and
Planning Service of the Texas Department of Public Safety, the Department of
Transportation has explained that section 502.404 does not apply to certain
tractors driving Abobtail.@  Indeed, this letter states that, although
section 502.404 of the Texas Transportation Code requires a commercial motor
vehicle to be issued two license plates for display, section 502.180(e) of the
Code authorizes the Department of Transportation to adopt rules regarding the
display of license plates.  See id. at
'' 502.404(a) and 502.180(e). 

As such, the Texas Department of
Transportation has adopted sections 17.21 and 17.51 of the Texas Administrative
Code, Title 43.  See 43 Tex. Admin. Code ' 17.21 (Supp. 2002) (Div. of Motor Vehicles,
Definitions) (defining Acombination license plates as a license plate [meaning
one license plate] issued for a truck or truck tractor . . . to be used in
combination with a semitrailer@) and ' 17.51 (Registration Reciprocity Agreements)
(specifying that Athe license plate issued to a power unit must be
installed on the front of the vehicle and the license plate issued for a
trailer must be installed on the rear of the vehicle.@).





[3]  The Court of
Criminal Appeals has held that determining the truth of an affidavit Ais a question of historical fact to be determined by
the trial court.@  Kober v.
State, 988 S.W.2d 230, 233 (Tex. Crim. App. 1999).





[4]  The State
bears the burden of establishing an exception to the warrant requirement.  Russell v. State, 717 S.W.2d 7, 9B10 (Tex. Crim. App. 1986).  





[5]  Additionally,
the trial court heard argument from both sides. 
In appellant=s argument, defense counsel asserted he was unaware Aof any law that specifically says . . . it=s against the law for a tractor-trailer that is
bobtailing without the trailer on the back . . . not to have a license on the
back of it.@  No evidence,
however, was ever presented to the trial court to support such an
argument.  Indeed, the suppression
hearing focused almost exclusively on the validity of appellant=s consent to search.





[6]  Citing Brick
v. State, appellant asserts his consent, if given at all, was tainted by
the illegality of the initial detention. 
See 738 S.W.2d 676, 680B81 (Tex.
Crim. App. 1987) (to determine admissibility of 
evidence derived from a warrantless, but consensual, search following an
illegal arrest, court considers (1) proximity of consent to arrest; (2) whether
seizure brought about police observation of particular objects; (3) whether
search was police misconduct; (4) whether consent was volunteered, not
requested; (5) whether arrestee knew he could decline search; and (6) whether
police purpose underlying the illegality was to obtain consent).  Because we hold the State=s initial detention of appellant to have been lawful, Brick
v. State does not apply.





[7]  See supra note
2 above.





[8]  Even if
appellant=s new-found evidence were material, appellant offers no
evidence to suggest he was diligent in discovering the inapplicability of
section 502.404 to tractor drivers.  See
Margraves, 56 S.W.3d at 685.  Indeed,
appellant=s discovery of the Powell letter construing sections 17.21
and 17.51 of the Administrative Code may have occurred after trial, but
sections 17.21 and 17.51 of the Administrative Code existed prior to trial and
easily could have been discovered with diligence.  See supra note 2. The fact that
appellant was ignorant of these administrative laws is no excuse.  See Varnes v. State, 63 S.W.3d 824,
830 (Tex. App.CHouston [14th Dist.] 2001, no pet.).   





[9]  In his closing
argument, defense counsel alleged appellant was innocent because his encounters
with L.M. and B.B. were consensual.  If
appellant=s defense is that L.M. and B.B. consented to have sex
with him, then evidence pertaining to the actual dates of the encounters is
immaterial.





[10]  This court
disagrees that Aprostitution@ and Asexual assault@ differ
only with regard to consent.  A person
commits the offense of Aprostitution@ when he
knowingly Aoffers to engage, agrees to engage, or engages in
sexual conduct for a fee,@ or when he Asolicits
another in a public place to engage with him in sexual conduct for hire.@ See Tex.
Pen. Code Ann. ' 43.02 (Vernon 1994). 
ASexual conduct@
includes deviate sexual intercourse, sexual contact, and sexual
intercourse.  Id. at '' 43.01(4). 

ASexual assault,@ on the
other hand, is committed when the person intentionally or knowingly Acauses the penetration of the anus or female sexual
organ of another person by any means, without that person=s consent.@  Id. at '
22.011(a)(1)(A). 





[11]  An offense is
a lesser included offense if:

(1)        it is established by proof of the same
or less than all the facts required to establish the commission of the offense
charged;

(2)        it differs from the offense charged only
in the respect that a less serious injury or risk of injury to the same person,
property, or public interest suffices to establish its commission;

(3)        it differs from the offense charged only
in the respect that a less culpable mental state suffices to establish its
commission; or

(4)        it consists of an attempt to commit the
offense charged or an otherwise included offense.

Tex. Crim. Proc. Code Ann. ' 37.09 (Vernon 1981). 






[12]  Appellant
points out his punishment was assessed at twenty-seven times the maximum
misdemeanor penalty of one-year for a prostitution conviction.





[13]  The trial
court=s instructions to the jury included not only the
definition of sexual assault as provided in section 22.011(a)(1)(A) of the
Texas Penal Code, it contained the definition of consent as provided in the
subsection 22.011(b)(1).   See Tex. Pen. Code Ann. ' 22.011(b)(1) (Vernon Supp. 2003) (AA sexual assault . . . is without the consent of the
other person if . . . the actor compels the other person to submit or
participate by the use of physical force or violence.@).





[14]  Subsection
3.03(a) of the Texas Penal Code provides A[w]hen
the accused is found guilty of more than one offense arising out of the same
criminal episode prosecuted in a single criminal action . . . [e]xcept as provided by subsection (b), the sentences shall
run concurrently.@  Tex. Pen. Code Ann. ' 3.03(a) (Vernon Supp. 2003).  

The offenses provided for in subsection
(b)Cthat may run concurrently or consecutivelyCinclude offenses under ' 49.08
(intoxication manslaughter); offenses for which a  plea agreement is reached in cases in which
the accused is charged with more than one offense under ' 49.08; and offenses under the following penal code
sections when committed against a victim younger than 17 years of age: ' 21.11 (indecency with a child), ' 22.011 (sexual assault), ' 22.021 (aggravated sexual assault), ' 25.02 (prohibited sexual conduct), and ' 43.25 (sexual performance by a child).  Subsection (b) also includes offenses for
which a plea agreement is reached wherein the accused is charged with more than
one offense against a victim younger than 17 years of age.  Id. at '
3.03(b).





[15]  The record
indicates a motion to cumulate was filed by the State pursuant to Texas Penal
Code ' 3.03(b)(2), which provides a trial court may cumulate
sentences for offenses committed under ' 22.011
against a victim younger than 17 years of age. 
See Tex. Pen. Code Ann.
' 3.03(b)(2) (Vernon Supp. 2003).  Because no evidence indicates either
complainant to have been younger than 17 years of age, ' 3.03(b)(2) does not apply.