**Laurin Stuart LANEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–00–01299–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 28, 2002.

Douglas M. Durham, Houston, for appellants.

Donald W. Rogers, Houston, for appellees.

Panel consists of Justices YATES, EDELMAN, and WITTIG.*

* Senior Justice Don Wittig sitting by assignment.

## OPINION

DON WITTIG, Senior Justice
(Assigned).

Appellant, Laurin Laney, appeals from his felony conviction for the possession of child pornography. A jury found him guilty, and the trial judge found two enhancement paragraphs to be true and sentenced him to imprisonment for life. On appeal, appellant contends: (1) that the warrantless seizure of his person was unconstitutional; (2) that the warrantless entry into his home was unconstitutional; (3) that the trial court erred in refusing to exclude his custodial statements; and (4) that his consent to search was not voluntary. We affirm.

## Background

Appellant lived in a mobile home park. On May 25, 1999, several Harris County Sheriff's deputies were called to the park on the report of a disturbance between neighbors. During the investigation, appellant admitted to the deputies that he turned off the electricity supply to a neighbor's trailer. The officers then placed appellant in the back of a patrol car. One of the deputies, Brian Quiser, noticed two small Hispanic boys standing on the porch of appellant's trailer. When Quiser made eye contact with them, one of the boys went inside the trailer. Quiser asked appellant if the boys were his, and appellant replied that they were not. The deputy then asked appellant if he had ever been arrested, and appellant responded that he had been arrested for indecency with a child.

Deputy Quiser walked over to the trailer and asked the boy still on the porch where the other child was. The boy replied that his brother Joey was in the back bedroom. Quiser told the first boy to stay on the porch and then entered the trailer and called for Joey, but there was no response. Quiser proceeded to look for the boy with his flashlight and eventually found him in the back bedroom. While sweeping this room with his flashlight, Quiser observed a piece of paper lying on a low shelf. The paper had photographic reproductions on it of what appeared to be eleven to twelve year old boys engaged in deviant sexual contact.

After this discovery by Deputy Quiser, Deputy Garrett DeMilia convinced appellant to sign a consent form that authorized a search of the premises. During the subsequent search, the officers seized the piece of paper and also seized a computer floppy disk on which similar images were stored.[1]

## Seizure of Person

 Appellant first contends that the warrantless seizure of his person violated both the Texas and the United States Constitutions. Appellant fails, however, to cite to any place in the record where he preserved this issue by raising it in the trial court. In order to preserve error, a timely and sufficiently specific request, objection, or motion must be made to the trial court. *See* TEX.R.APP. P. 33.1(a). This is true even when the complaint is on constitutional grounds. *Espinosa v. State,* 29 S.W.3d 257, 260 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). After examining the four pro se motions to suppress along with defense counsel's motion to suppress and the transcript of the hearing on the motions to suppress, we conclude that appel-

---

1. An interim search also occurred after Quiser's entry but before consent was obtained. During this entry, Quiser took DeMilia into the trailer to show him the piece of paper, but they removed nothing from the trailer at that time. On appeal, appellant brings no issues based specifically on this second entry.

lant's argument regarding the legality of his detention was not raised in the court below and is, therefore, waived. Accordingly, we overrule issues one and two.

## Warrantless Entry

■ Appellant next contends that the initial warrantless entry by the police into his home was unconstitutional under the United States and Texas Constitutions, citing U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. Generally speaking, a search of a person's home is unconstitutional absent a warrant obtained on probable cause. *See Reyes v. State,* 741 S.W.2d 414, 430 (Tex.Crim.App.1987). Over time, various exceptions to this rule have been identified. *See Chilman v. State,* 22 S.W.3d 50, 54 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). In the trial court, the State defended the warrantless intrusion in the present case by reference to the community caretaking function of police officers. This exception to the warrant requirement was first recognized by the United States Supreme Court in *Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), and later identified for use in Texas in *Wright v. State,* 7 S.W.3d 148, 152 (Tex.Crim.App.1999).

■ Basically, the "community caretaking" doctrine acknowledges that there exists times and situations outside the scope of a criminal investigation when a police officer may legitimately need to effect a stop or enter a place that would otherwise require probable cause or a search warrant. A common example cited is when an officer renders assistance at the scene of a traffic accident. The officer is not then investigating a crime, but, under the right set of circumstances, the officer may use his or her observations to effect a search and seizure. *See, e.g., Cady,* 413 U.S. at 441. And the majority of cases utilizing the community caretaking analysis do appear to involve searches of vehicles, perhaps because a person's home is imbued with a greater degree of privacy than a vehicle. *See id.* at 441–42.[2]

In dicta in *Wright,* the Texas Court of Criminal Appeals stated:

Only in the most unusual circumstances will warrantless searches of private, fixed property ... be justified under the community caretaking function, given the greater expectation of privacy inherent with respect to residences and other private real property.

*Wright,* 7 S.W.3d at 152. The Court of Criminal Appeals, however, has yet to di-

**2.** In fact, the federal circuit courts have split as to whether the caretaking doctrine can apply to justify a search and seizure within a residence. *See* Mary E. Naumann, *The Community Caretaker Doctrine: Yet Another Fourth Amendment Exception,* 26 Am. J.Crim. L. 325, 348–52 (1999). Three circuits, the Seventh, Ninth, and Tenth, restrict *Cady* to its facts and only permit use of the doctrine in the context of vehicle searches. *See, e.g., United States v. Bute,* 43 F.3d 531, 535 (10th Cir.1994); *United States v. Erickson,* 991 F.2d 529, 532 (9th Cir.1993); *United States v. Pichany,* 687 F.2d 204, 209 (7th Cir.1982). At least two circuits, the Fifth and Eighth, allow application of the doctrine to home invasions when the objective facts known to the officer create a reasonable basis for his or her ac-

tions. *See, e.g., United States v. York,* 895 F.2d 1026, 1029–30 (5th Cir.1990); *United States v. Nord,* 586 F.2d 1288, 1290–91 (8th Cir.1978). Two additional circuits, the First and Fourth, also use the reasonableness test but have yet to extend it to home invasions. *See generally* Naumann, *supra,* at 350. Two other circuits, the Second and Sixth, have permitted use of the doctrine outside the vehicle search context but have required more than simple objective reasonableness to justify its use. *See, e.g., United States v. Rohrig,* 98 F.3d 1506, 1523 (6th Cir.1996) (home intrusion case); *Penfield v. Venuti,* 93 F.R.D. 364, 367 (D.Conn.1981). State courts have generally been more expansive in their application of the doctrine. *See* Naumann, *supra,* at 352 (and cases cited therein).

rectly address the application of the doctrine in a home intrusion case. Therefore, although the doctrine appears to be applicable to such situations in Texas, no test has been provided for its application. *Wright* involved the search of a vehicle, and the court used a list of factors in making the determination that the initial stop of the vehicle was reasonable in order to check on the welfare of a passenger. *See id.* at 151–52. In the present case, appellant attempts to apply these factors to his situation at the time he was detained. The *Wright* factors, however, are not particularly helpful given the facts of this case, especially since, as discussed below, it was the officer's concern and responsibility for the welfare of the children that was at issue at the time of the warrantless entry and not any concern over the well-being of appellant.

The Fifth Circuit has stated that the test for application of the community caretaking doctrine is simply one of reasonableness in light of the objective facts known to the officer. *See United States v. York*, 895 F.2d 1026, 1028–30 (5th Cir. 1990); *United States v. Prescott*, 599 F.2d 103, 106 (5th Cir.1979). In *York*, the court also examined the reasonableness of the defendant's expectation of privacy under the circumstances. 895 F.2d at 1029.[3] The Sixth Circuit has utilized a more refined set of factors for determining when a warrantless entry of a home is justified as a caretaking function. *See, e.g., United*

*States v. Rohrig*, 98 F.3d 1506, 1523 (6th Cir.1996); *United States v. Meixner*, 128 F.Supp.2d 1070, 1074–75 (E.D.Mich.2001). Those factors include (1) whether immediate government action was required; (2) whether the government interest was sufficiently compelling to justify a warrantless intrusion; and (3) whether the citizen's expectation of privacy was diminished in some way. *Rohrig*, 98 F.3d at 1521; *Meixner*, 128 F.Supp.2d at 1074–75. We find that Deputy Quiser's actions in the present case satisfy the tests set forth by both the Fifth and Sixth Circuits.[4] However, the factors listed in *Rohrig* appear to be particularly helpful in assessing reasonableness under the facts of this case.

■ First, as to whether immediate government action was required, Deputy Quiser understood that at least one child was in the trailer home of a man who had twice been arrested for indecency with a child, and he believed that the child was about to be left alone when appellant was arrested and removed from the premises. The deputy had also been told by the appellant that the children did not belong to him. The time was between 12:02 a.m. and 1:30 a.m. The children looked to be about ten years old. The deputy further suggested in his testimony that he was concerned for the safety of the children, particularly in that one of the boys, Joey, did not come out of the trailer or even answer when the deputy called to him.

**3.** The defendant in *York* was arrested for illegal possession of firearms after officers saw the weapons in his home while the officers were helping a family living there remove their possessions. 895 F.2d at 1029–30. The defendant had apparently become intoxicated, belligerent, and threatening toward the family. The Fifth Circuit held that the officers acted reasonably in entering the house as peacekeepers, which the court identified as a community caretaking function. *Id.* at 1030. The court further suggested that in inviting

the family into his home and then becoming aggressive toward them, the defendant should have had a reasonable expectation that police officers would enter his home. *Id.*

**4.** The ultimate aim of both tests is to assess the reasonableness of the officer's actions. *See Rohrig*, 98 F.3d at 1521; *York*, 895 F.2d at 1029–30. After all, the touchstone of the Fourth Amendment is reasonableness. *United States v. Knights*, 534 U.S. 112, ——, 122 S.Ct. 587, 591, 151 L.Ed.2d 497 (2001).

Some of the lights were out in the trailer and the presence of other adults was unknown. The officer testified he went in to see if the boy was okay and if there was anyone to care for him. Under the circumstances, it was reasonable for the officer to believe that the child might have been at risk to run away or to harm himself or that he might have already been harmed. We find that this was sufficient to establish that immediate government action was required.

Second, we look to whether the governmental interest was sufficiently compelling to justify the warrantless intrusion. As has been often stated in various contexts, the State has a profound interest in the welfare of children. *See, e.g., Gonzales v. State,* 818 S.W.2d 756, 764–66 (Tex.Crim. App.1991) (State's interest in sheltering a child witness from the trauma of testifying in a child abuse case); *Henderson v. Wietzikoski,* 841 S.W.2d 101, 104 (Tex.App.-Waco 1992, writ denied) (State's interest in children is exercised through regulation of the parent-child relationship and defining the rights of parents); *Gass v. State,* 785 S.W.2d 834, 839–40 (Tex.App.-Beaumont 1990, no pet.) (State's interest in altering punishment range based on age of sexual assault victim). There was a compelling government interest in this case to protect the welfare of two young children by ensuring that they were not left alone and uncared-for in the middle of the night. The State's interest under these facts was sufficiently compelling to justify the intrusion.[5]

Third, we look to whether the citizen's reasonable expectation of privacy was diminished in some way. The appellant had

children staying with him that were not his own; this in itself should diminish his expectation of privacy. *See York,* 895 F.2d at 1030 (defendant lost some expectation of privacy by inviting a family to live in his home). Additionally, appellant's antagonistic, and possibly criminal, act toward a neighbor increased the likelihood, however minimally, that the police might be required to enter his home. *Cf. id.* (defendant further reduced his reasonable expectation of privacy by aggressive action toward the family); *Rohrig,* 98 F.3d at 1522 (defendant lost reasonable expectation of privacy by annoying his neighbors with loud music). Appellant's reasonable expectation of privacy in his own home was considerably compromised by these factors.

Appellant complains, however, that the officers in this case impermissibly created the situation themselves by detaining him. To the contrary, it was appellant who created the circumstances under which the officers felt compelled to detain him and to enter his home. Appellant cut off the power supply to his neighbor's trailer and had young children staying with him that were not his own.

Deputy Quiser's actions in entering the home to ensure the well-being of the young child were reasonable under the circumstances. Accordingly, we find that the warrantless intrusion of appellant's residence was justified under the community caretaking doctrine. Appellant's third and fourth issues are overruled.

### Custodial Statements

In his fifth issue, appellant contends that the trial court erred in refusing to exclude his custodial statements from evidence.

---

5. In *Williams v. Lopes,* 64 F.Supp.2d 37 (D.Conn.1999), the court upheld the reasonableness of a home intrusion where the police, who had already removed the plaintiff's daughter from the home pending a mental health evaluation of the plaintiff, returned to retrieve a car seat and to obtain information regarding relatives who might be able to look after the girl.

Specifically, appellant complains of two portions of the testimony given by Deputy Quiser. The first occurred during the suppression hearing, outside the presence of the jury, when Quiser stated: "I also asked him if he ever been [sic] arrested before, brought to jail. He stated that he had, with indecency with a child." The second occurred before the jury in the State's case in chief when the prosecutor asked what Laney's response was when asked if the boys inside his trailer were his children; Quiser testified: "He stated they were not. They were staying with him." [6]

 We find that appellant failed to preserve any error in the admission of these statements by failing to make a timely and sufficiently specific request, objection, or motion. *See* Tex.R.App. P. 33.1(a); *Espinosa*, 29 S.W.3d at 260 (preservation of complaint on constitutional grounds). Appellant's trial counsel filed a motion to suppress. The motion first argues that "the warrantless search of defendant's person or residence was without probable cause...." The motion then states:

Such search and seizure is therefore unlawful and fruits thereof must be suppressed. All statements, either written or orally made, all identifications, and all materials and substances seized *i.e.*

(pornographic pictures) during and after such acts were fruits of the initial violation of rights of this Defendant.

Appellant made no other request, objection, or motion, either oral or written, complaining of the admission of the statements now complained of on appeal. Specifically, appellant made no objection to either statement when repeated by Deputy Quiser during the suppression hearing or the trial on the merits. We find that the general complaints in the motion to suppress, standing alone, were insufficient to preserve any error related to these statements. Furthermore, the complaints only address the fruits of the search and do not expressly attack any pre-search questioning of the appellant. The statements complained of on appeal occurred before the search of appellant's trailer. If the motion to suppress was even intended to reach these statements, it was not sufficiently specific to apprize the court of that intent. Any error was waived. *See Daniels v. State*, 25 S.W.3d 893, 897 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (holding that objection to admission of statement lacked sufficient specificity or clarity).[7] Accordingly, appellant's fifth issue is overruled.

### Consent to Search

 In his sixth issue, appellant contends that the State failed to prove that his

---

6. At the suppression hearing, Deputy Quiser actually testified as to both of appellant's statements: that the children were not appellant's and that appellant had been previously arrested. During the guilt/innocence phase, Quiser testified only about the statement that the children were not appellant's.

7. Appellant's counsel on appeal was not his trial counsel. Trial counsel's strategy in the motion to suppress, and in the hearing on the motion, appeared aimed at preventing the admission of the evidence found inside appellant's trailer, not at excluding statements made by appellant. Not only did trial counsel fail to object to the specific statements now complained of on appeal, counsel actually

elicited testimony from the defendant, in the suppression hearing, on the very same issues and used the statement regarding prior arrests (calling them "prior convictions") in his argument on the motion. Furthermore, among the theories raised in the hearing, trial counsel argued that the facts known to Deputy Quiser at the time (including appellant's statements) did not give him authority to enter the trailer. At no time did counsel argue that the statements should not be admitted before the jury. To raise a valid issue, the legal theory espoused on appeal must comport with the legal basis for the objection made in the trial court. *See Bell v. State*, 938 S.W.2d 35, 54 (Tex.Crim.App.1996).

consent was not an exploitation of the unlawful seizure of his person. Because we have already held, in response to issue one above, that appellant failed to preserve any complaint regarding the lawfulness of his detention, issue six is also overruled.

In his seventh issue, appellant contends that the State failed to prove that the consent to search was voluntarily given. It was stipulated in the trial court that no search warrant was ever obtained. Appellant did, however, sign a consent to search his trailer after Deputy Quiser had already entered the trailer and found incriminating evidence. The form signed by appellant states that he was "informed ... of my constitutional right not to have a search made of the premises," and that "this consent is being given ... freely and voluntarily and without threats or promises of any kind and is given with my full and free consent." Despite the statements to the contrary on the form, appellant contends that his consent was, in fact, not voluntarily given.

■■■ Consent to search operates as another exception to the Fourth Amendment's warrant requirement. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Ibarra,* 953 S.W.2d 242, 243 (Tex. Crim.App.1997). The consent must be voluntarily given to be considered effective, and voluntariness is a question of fact to be determined from the totality of the circumstances. *Carmouche v. State,* 10 S.W.3d 323, 331 (Tex.Crim.App.2000). The burden of proof is on the State to show by clear and convincing evidence that the consent was freely given. *Ibarra,* 953 S.W.2d at 245. The consent must be positive and unequivocal, and the police must not have employed any duress or coercion. *Allridge v. State,* 850 S.W.2d 471, 493 (Tex. Crim.App.1991), *cert. denied,* 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993). If

the record supports a finding by clear and convincing evidence that the consent was free and voluntary, that finding should not be disturbed on appeal. *Carmouche,* 10 S.W.3d at 331. Among the factors to be considered in determining voluntariness are: whether the consenting person is in custody, whether he or she was arrested at gunpoint, and whether the person was informed that he or she did not have to consent. *Id.* Other factors include: the youth of the accused, the education of the accused, the intelligence of the accused, the constitutional advice given to the accused, the length of the detention, the repetitiveness of the questioning, and the use of physical punishment. *Reasor v. State,* 12 S.W.3d 813, 818 (Tex.Crim.App. 2000).

■■■ In a suppression hearing, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ballard,* 987 S.W.2d 889, 891 (Tex. Crim.App.1999). We view the evidence from a suppression hearing in a light most favorable to the trial court's ruling. *Id.*

■■■ Appellant testified at the suppression hearing. He stated that he was arrested at gun point and placed in the back of a patrol car and that the doors were locked so he could not leave. He said that he had not been given his *Miranda* warnings before he was told that an officer had already entered the premises and found photographs of a pornographic nature. According to appellant, he initially refused to give consent to an additional search. He said that he changed his mind only because he "had to urinate real bad" and the officer told him that he would have to wait until a detective arrived with a search warrant.

Deputy Garrett DeMilia obtained appellant's signature on the consent form. De-

Milia testified at the hearing that he talked to appellant about consenting to a search while they were both outside the patrol car. He said that no guns were drawn and appellant did not have handcuffs on at the time. DeMilia denied that appellant was threatened or coerced in any way. He said that normally he both reads the consent form to the person and has the person read it as well, but he could not remember if that happened on the night in question. He stated that he told appellant that they had two options, either they could wait on a search warrant or appellant could sign a consent to search. DeMilia further testified that appellant signed the form voluntarily.

Appellant was 41 years old at the time of his arrest. Although the subject of his education was not raised in the proceedings below, his responses to questioning at the hearing and his multiple pro se motions evidence a certain degree of learning and sophistication about the law. From the time appellant was detained to the time he signed the consent form was approximately one-and-a-half hours. There is no evidence of repetitive questioning or physical punishment.

Given that the trial judge was the sole judge of the credibility of the witnesses, the judge was free to discount appellant's testimony and rely on the testimony of Deputy DeMilia. *See Ballard,* 987 S.W.2d at 891. Deputy DeMilia's testimony, combined with appellant's signature on the consent form and the other factors discussed above, provided clear and convincing evidence that the consent was freely given. *See Ibarra,* 953 S.W.2d at 245. Accordingly, appellant's seventh issue is overruled.

### Pro Se Briefing

Appellant filed a pro se brief in which he made additional arguments and raised two new issues not alleged in defense counsel's brief. However, there is no absolute right to hybrid representation. *Allridge,* 850 S.W.2d at 496; *Rudd v. State,* 616 S.W.2d 623, 625 (Tex.Crim.App. 1981). Appellant's request for leave to file a pro se brief was denied. *See generally Ford v. State,* 870 S.W.2d 155, 157 (Tex. App.-San Antonio 1993, pet. ref'd) (considering points in pro se brief after motion for leave to file granted). We, therefore, decline to address the additional issues.

The judgment of the trial court is affirmed.