COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 


 
 
  
 TRINA LYNN
 OLGUIN,
  
                             Appellant,
  
 v.
  
 THE STATE OF
 TEXAS,
  
                             Appellee.
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
    
  ' 
  
 
 
  
  
                 No. 08-02-00241-CR
  
 Appeal from the
  
 244th District Court
  
 of Ector County, Texas 
  
 (TC# C-29,057)
  
 
 
 
 
  
  
 
 
  
  
 
 
  
  
 
 


MEMORANDUM OPINION

 

Trina Lynn Olguin
appeals the trial court=s denial of her motion to suppress evidence
and her motion to suppress unlawful stop, detention and arrest.  After the denial of these motions, Olguin pleaded guilty to possession of a controlled
substance, to wit: cocaine, in an amount of four grams or more but less than
two hundred grams, and received a sentence of eight years= confinement, probated, a 180 day
suspension of her driver=s license, and payment of a fine.  We affirm.








Facts

On April 20, 2001, Officer Kelly
Cecil stopped a Plymouth Neon driving forty-four miles per hour in a thirty
mile per hour zone.  As he approached the
vehicle on the corner of West 20th and Santa Monica, Trina Lynn Olguin, the driver, stuck her head out of the window and
started talking to him.  When the officer
asked for her license and insurance, Olguin said she
had it in her trunk.  After looking
through the trunk, Olguin told the officer that she
could only find her birth certificate.

As Officer Cecil was looking at the
birth certificate, he explained to Olguin that he
could smell the odor of marijuana coming from the inside of her car.  He also noticed that she was Afidgety, kind of hyper, and I don=t know if you want to call it
nervous, whatever, just kind of bouncing around a little.@ 
After Olguin told him there was no reason for
the smell of marijuana to be coming from the car, Officer Cecil kept talking
with her.  Then he noticed the smell of
marijuana coming from her.  He asked her
if she had been smoking marijuana that day. 
She said no.  She then told the
officer that she had just left her boyfriend=s house for lunch.  When asked if her boyfriend or anyone else
was smoking marijuana there, she told the officer that she was at her cousin=s house and that the cousin was
smoking marijuana.








Officer Cecil asked if she had any
narcotics in the car.  She said no and
offered to let the officer check her bag. 
No narcotics were found in her bag. 
He then asked if she had any narcotics in her car.  She answered no.  When Officer Cecil asked if he could search
the car, Olguin walked to the door, which was open,
but did not respond verbally.  When he
asked a second time, Olguin just looked at him.  The third time, he asked if she would mind if
he searched the car.  She said no, and he
began his search.  There was no written
consent, but the interaction was videotaped. 
When the officer stepped to the open driver=s door, he found a half-burned
marijuana cigarette in the handle of the door panel.  At that point, Olguin
was arrested and handcuffed.  She was
then read her Miranda rights. 
After Olguin responded that she understood her
rights, Officer Cecil escorted her to the back of his cruiser.

Officer Cecil continued to search the
car; checking the pockets of a jacket in the passenger seat, he found a pack of
cigarettes, some money, and a plastic bag containing what appeared to be
cocaine.  A field test confirmed that the
substance in the bag was cocaine.  The
cocaine in the plastic bag was packaged in fourteen individually wrapped balls
of cocaine with an aggregate weight of seventeen grams.  In the right pocket of the jacket was a small
amount of marijuana and some rolling papers.








As they were driving to the law
enforcement center, Olguin told Officer Cecil that
she was getting dizzy and that her hands and feet were swelling.  He asked if she wanted an ambulance, but she
declined.  He also asked her how long she
had been using cocaine.  Olguin told him that she had been doing cocaine since she
was seventeen years old, but Anot as bad as she=s been doing it now.@ 
She also told the officer that the cocaine was for personal use and that
she bought it for $400.  At no point did Olguin indicate to the officer that she wanted to invoke
her right to remain silent.  The video
recording continued while he transported her.

Olguin was indicted for the possession of
cocaine.  After a hearing, Judge Watkins
denied the motion to suppress the evidence from the search.  Olguin entered an
open plea to possession, and received a sentence of eight years= confinement, probated, a 180 day
suspension of her driver=s license, and payment of a fine.

Consent to search was voluntary

Point of Error One contends the trial
court abused its discretion by denying Olguin=s motion to suppress when the State
failed to prove, by clear and convincing evidence, that appellant=s consent to search her vehicle was
clear and unequivocal.  The basis of Olguin=s argument is that the first two times that Officer Cecil
requested permission to search her car, Olguin did
not verbally respond in the affirmative or negative.  Only on the third request, in which the
officer asked if Olguin Awould mind@ if he looked in the car did she give
permission.  Counsel for the appellant
presents the first two responses as refusals to give consent.  We cannot agree.  Although multiple requests are considered by
the courts in determining whether consent is voluntary, there is no rule that
bars officers from making more than one request for permission to search,
particularly in the face of indefinite responses.








Standard
of review

In reviewing a trial court=s ruling on a motion to suppress
evidence, an appellate court applies a bifurcated standard.  Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App.
2000) (citing Guzman v. State, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997)). 
We give almost total deference to the trial court=s determination of historical facts,
and review de novo the court=s application of the law of search
and seizure.[1]  Id. 
Due weight should be given to the inferences made by the trial
judge.  Guzman, 955
S.W.2d at 87.

The
law of voluntary consent








Under the Fourth and Fourteenth
Amendments, a search conducted without a warrant issued on probable cause is per
se unreasonable, subject to a few well-established exceptions.  Schneckloth v. Bustamonte, 412 U.S. 218, 219,
93 S.Ct. 2041, 2043-44, 36 L.Ed.2d 854 (1973); Reasor v. State, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000). 
Consent to search is one of the well-established exceptions to the
constitutional requirements of both a warrant and probable case.  Carmouche, 10
S.W.3d at 331 (citing Schneckloth, 412 U.S. at
219, 93 S.Ct. at 2043-44).  In order for consent to search to be valid
under the Fourth Amendment it must be voluntary, not coerced by explicit or
implicit means.  Id. (citing Ohio
v. Robinette, 519 U.S. 33, 40, 117 S.Ct. 417,
421, 136 L.Ed.2d 347 (1996); Schneckloth, 412
U.S. at 228, 93 S.Ct. at 2048, 36 L.Ed.2d 854; Allridge v. State, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991)). 
Consent must be shown to be positive and unequivocal, and there must not
be any duress or coercion.  Id.  Consent is not established by A>showing no more than acquiescence to
a claim of lawful authority.=@ 
Id. (citing Bumper v. North Carolina, 391 U.S. 543, 548,
88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968)).

The burden of proving that consent to
search was freely given falls on the State. 
Although the Federal Constitution only requires that the State prove the
voluntariness of consent by a preponderance of the
evidence, the Texas Constitution imposes a higher standard, requiring the State
to show by clear and convincing evidence that consent to search was freely
given.  Id.; State
v. Ibarra, 953 S.W.2d 242, 245 (Tex. Crim. App.
1997).








Voluntariness of consent is determined by looking
at the Atotality of all the surrounding
circumstances--both the characteristics of the accused and the details of the
interrogation.@ 
Reasor, 12 S.W.3d at 818 (citing Schneckloth, 412 U.S. at 226, 93 S.Ct.
at 2047).  A number of factors enter the
determination of whether the consent was voluntarily given for the search:  whether the consenting person is in custody;
whether he or she was arrested at gunpoint; whether the person was informed
that he or she did not have to consent; the constitutional advice given to the
accused; the length of detention; the repetitiveness of the questioning; and
the use of physical punishment.  Laney
v. State, 76 S.W.3d 524, 532 (Tex. App.--Houston [14th Dist.] 2002, pet.
granted) (citing Carmouche, 10 S.W.3d at 331; Reasor, 12 S.W.3d at 818).  Courts also consider the characteristics of
the person given consent in the determination. 
These include the youth, education, and intelligence of the
accused.  Id.
(citing Reasor, 12 S.W.3d at 818).

Applying
the law to these facts

Olguin was in her mid-twenties at the time
of her arrest.  There is no indication
that she lacked any capacity, other than the fact that she may have been under
the influence of marijuana and she was feeling dizzy after she was
arrested.  Although appellant was not in
a situation in which she would have felt free to leave, she had been stopped
for speeding.  Further, the officer was
not on a fishing expedition to find contraband in the car of a person stopped
for speeding.  Rather, he was reacting to
a smell of marijuana coming from the car. 
Olguin was not arrested until after she gave
consent to search the car and the officer found a half-burned marijuana
cigarette in the driver=s side panel of the door. 
At no time does the officer draw a gun or physically restrain Olguin.








Olguin makes much of the fact that there
were three requests before she gave permission for the officer to search the
vehicle.  Notably, there was no
definitive verbal response refusing consent. 
Although the officer did not tell her that she did not have to consent
to a search, this alone is not determinative. 
Carmouche, 10 S.W.3d at 332-33 (citing Schneckloth,
412 U.S. at 248-49, 93 S.Ct. at 2059).  The trial judge, after viewing the videotape
of the stop, did not find the first two responses to be refusals that would
disprove the voluntariness of her response when the
officer asked if she would mind if he searched. 
Officer Cecil asked appellant three times, in various forms, if he could
search the vehicle.  He did not begin the
search until Olguin=s permission was given.  Appellant responded with clarity only on the
third moment, when he asked if she Awould mind.
. .@ 
Her first two non-verbal responses cannot be characterized as asserted
refusals; rather, they appear to be moments of assessing her situation and
deliberating whether to give consent. 








Olguin further argues that she was
answering no after a series of questions to which she had answered Ano@ previously.  Citing to United States v. Montilla, 739 F.Supp.
143 (W.D.N.Y. 1990), she argues that merely answering a series of questions
with either a positive or negative response such as this does not constitute
informed consent.  This case was reversed
by the U.S. Court of Appeals for the Second Circuit, finding that consent was
voluntarily given.  United
States v. Montilla, 928 F.2d 583 (2nd Cir. 1991).  That aside, the defendant in Montilla spoke primarily Spanish, and gave a Ayes@ answer after a series of questions
that also elicited a response of Ayes.@ 
It was unclear to the trial judge in that case that the response was an
affirmative grant of permission or Aused simply as an
acknowledgment of what the person had to say and that the listener [was]
waiting for more details.@  Montilla,
739 F.Supp. at 145.  Olguin has not been shown to have been similarly
situated.  Even if she were, the higher
court rejected this reasoning.   We
overrule the first point of error.

Issue not preserved for appeal

In her second point of error, Olguin contends that the trial court abused its discretion
by denying her motions when the officer interrogated her while she was in
custody without the benefit of Miranda warnings.  Looking at the record, the trial court did
not rule on the Miranda issue:

THE
COURT:  Well, I think there was, based on
the evidence that I heard and saw, there was consent
for the search--to allow the search.  I
am concerned that the Miranda warnings weren=t given after the arrest, unless I missed
something.  He didn=t read all the warnings to her.

I think at this time, as far as pretrial, what I am
going to do is allow the evidence that was seized based on the consent to be
admissible and will deny that.

Now, I have a concern about the statements that were
said after the arrest and with her Miranda rights being read to her completely
and I=m going to reserve the right to rule on that prior to
the time of trial.  Maybe--maybe I=m seeing something no one else is.  I am concerned about that part of it.

Maybe we may have a short pretrial before we have the
actual trial on that part.  In the tape,
I don=t believe all the Miranda warnings were read to Ms. Olgin, [sic] unless I missed it.  

 

Defense counsel made no objection to the lack of a ruling on
the Miranda issue.  Thus, the
issue is not properly preserved for appeal. 
No action by the trial court can be read as implicitly ruling on the
issue.  Tex.
R. App. P. 33.1.  Because of this,
the issue is not properly preserved for appeal. 
The second point of error is overruled.








Conclusion

For the foregoing reasons, the
judgment of the trial court is affirmed.

 

SUSAN
LARSEN, Justice

September 18, 2003

 

Before Panel No. 1

Larsen, McClure, and Chew,
JJ.

 

(Do Not Publish)

 











[1]In
Carmouche, the Court of Criminal Appeals
deviated in the amount of deference given to the trial court=s determination with regard to videotape
evidence because it did Anot
pivot >on an
evaluation of credibility and demeanor.=@ Carmouche,
10 S.W.3d at 332. 
In that case, however, Athe
videotape present[ed] indisputable visual evidence
contradicting essential portions of [Officer] Williams=
testimony.@  Id. 
The Court explained, AIn these narrow circumstances, we cannot blind ourselves to
the videotape evidence simply because Williams=
testimony may, by itself, be read to support the Court of Appeals= holding.@  Id. 
Although the parties interpret the events on the tape differently in the
present case, the testimony of the officer is not in such conflict with the
evidence on the video.