COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




NOEL ORGAIN,


 Appellant,


v.



THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-05-00282-CR



Appeal from the


384th Impact District Court


El Paso County, Texas 


(TC# 20030D02228) 



O P I N I O N


 Noel Orgain appeals his conviction for possession of marihuana, more than 50 pounds but
less than 2,000 pounds. He argues that: (1) officers lacked probable cause to search his vehicle;
and (2) his consent to search was not voluntarily given. We affirm.

 On the morning of March 6, 2003, Trooper Andres E. Mata, of the Texas Department of
Public Safety, was eastbound on Interstate 10 when he noticed Appellant's west bound car. 
Trooper Mata testified that it appeared to him that the car's window-tinting was too dark. 
Trooper Mata turned his patrol car around and after concluding that the car's window tint was in
violation of the traffic code, initiated a traffic stop approximately three miles west of Tornillo,
Texas. (1)

 At the hearing on the motion to suppress, Trooper Mata testified that when he approached
the vehicle, Appellant "immediately opened the door . . . and advised me that the windows don't
work and he closed it." Trooper Mata asked Appellant to exit the vehicle and when Appellant
did so, he noticed the "overpowering odor of strawberry air freshener." According to Trooper
Mata, and based on his training and experience, air freshener is often used to mask the odor of
narcotics and contraband. After Appellant exited the vehicle, he walked into the right-hand lane
of the interstate, which Trooper Mata thought was unusual. After Trooper Mata asked Appellant
to step onto the side of the road, he asked for Appellant's driver's license. Trooper Mata stated
that he noticed Appellant's voice was trembling when he spoke and he was "real shaky." As
Trooper Mata gathered information from Appellant's drivers license, Appellant began pacing and
Trooper Mata asked Appellant to stand in front of him. A short while later, Appellant began
pacing again. Trooper Mata indicated that Appellant's behavior made him "a little nervous."

 Trooper Mata then began to question Appellant. First, he asked Appellant who owned
the car. Appellant replied that the car belonged to a friend. When Trooper Mata asked which
friend, Appellant indicated the car belonged to "Carlos." Trooper Mata asked Appellant for
Carlos's last name and Appellant replied that he did not know it. Trooper Mata then asked
Appellant where he was coming from and Appellant responded that he was coming from "down
the road." Trooper Mata asked from where down the road, and Appellant replied, "back that
way." Trooper Mata stated that Appellant could not answer the question but indicated that he
was coming from "a friend's house from down the road."

 Trooper Mata then asked Appellant questions about where he picked up the car, where he
was going, and what he was doing with the car. According to Trooper Mata, Appellant told him
that he was thinking of buying the car. When Trooper Mata asked Appellant the year of the car,
Appellant could not answer. When asked where he was going, Appellant replied that he was
"just taking [the car] for a ride. He's going to have it--conduct a tune-up on it." Trooper Mata
then asked Appellant where he was taking the car for a tune-up and Appellant replied "Tune-Up
Masters." When asked the location of Tune-Up Masters, Appellant did not know. At some
point, Trooper Mata also asked Appellant if he had ever been arrested, and he replied, "[j]ust
traffic tickets." However, a criminal history check revealed that Appellant had been arrested for
possession of marihuana.

 After completing the traffic stop and issuing a warning to Appellant for illegal window
tint, Trooper Mata asked Appellant if there was anything illegal inside the vehicle. Appellant
indicated there was nothing illegal in the vehicle and Trooper Mata asked for consent to search. 
When Trooper Mata looked inside the vehicle, he noticed several burlap sacks sitting on the back
seat. When he looked inside one of the burlap sacks, he noticed a green, leafy substance, which
appeared to be marihuana. According to Trooper Mata, he visually estimated the sacks
cumulatively contained approximately 300 pounds of marihuana. Appellant was arrested and his
car was impounded. A later search of the vehicle revealed additional burlap sacks containing
marihuana concealed in the trunk.

 Appellant was charged by indictment with the unlawful possession of more than 50
pounds but less 2,000 pounds of marihuana. Appellant moved to suppress the evidence
recovered as a result of the traffic stop. After a hearing, the trial court denied the suppression
motion and Appellant pleaded guilty. Pursuant to a plea agreement, the trial court assessed
punishment at ten years' confinement in the Institutional Division of the Texas Department of
Criminal Justice, probated, a $1,000 fine, and $223 in costs.

Standard of Review In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard
of review. Carmouche v. State, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000). At a suppression
hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony and may accept or reject all or any part of a witness's
testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000). Accordingly, we do not
engage in our own factual review of the trial court's decision. Romero v. State, 800 S.W.2d 539,
543 (Tex.Crim.App. 1990). We give almost total deference to the trial court's ruling on
questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of
credibility and demeanor. Johnson v. State, 68 S.W.3d 644, 652-53 (Tex.Crim.App. 2002). On
the other hand, mixed questions of law and fact that do not turn on the credibility and demeanor
of a witness are reviewed de novo. Id.

 When the trial court makes no express findings of fact, as here, we review the evidence in
the light most favorable to the trial court's ruling. Carmouche, 10 S.W.3d at 327-28. We
assume that the trial court made implicit findings of fact that support the ruling as long as those
findings are supported by the record. Walter v. State, 28 S.W.3d 538, 540 (Tex.Crim.App.
2000). In addition, we will uphold the trial court's ruling if it is correct on any theory of law
applicable to the case. Ross, 32 S.W.3d at 855-56.

 In Issue Two, Appellant argues the trial court erred when it implicitly found that he
voluntarily consented to the search of his automobile. We must disagree. Under the Fourth and
Fourteenth Amendments, a search conducted without a warrant issued on probable cause is per se
unreasonable unless it falls within one of the well-established exceptions to the warrant
requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043-44, 36 L.Ed.2d
854 (1973); Reasor v. State, 12 S.W.3d 813, 817 (Tex.Crim.App. 2000). Consent to search is
one of the well-established exceptions to the warrant and probable cause requirements. 
Carmouche, 10 S.W.3d at 331, citing Schneckloth, 412 U.S. at 219, 93 S.Ct. 2043-44. To show
that a search was made with the property owner's consent and thus trigger the consent exception
to the warrant requirement, the State must prove by clear and convincing evidence, based on the
totality of the circumstances, that the defendant gave consent freely and voluntarily. Reasor, 12
S.W.3d at 818. For consent to be voluntary, it must "not be coerced, by explicit or implicit
means, by implied threat or covert force." Carmouche, 10 S.W.3d at 331, quoting Schneckloth,
412 U.S. at 228, 93 S.Ct. 2048.

 There are a number of factors which enter into the determination of whether consent was
voluntary. For example, whether the consenting person was in custody; whether he or she was
arrested at gunpoint; whether the person was informed that he or she did not have to consent; the
constitutional advice given to the accused; the length of detention; the repetitiveness of the
questioning; and the use of physical punishment. Laney v. State, 76 S.W.3d 524, 532
(Tex.App.--Houston [14th Dist.] 2002), aff'd, 117 S.W.3d 854 (Tex.Crim.App. 2003). Specific
characteristics of the person giving consent are also considered. Id. at 532. These individual
characteristics include such factors as the individual's age, education, and intelligence. Id.

 It appears from the record that Appellant was approximately thirty-eight years old at the
time of the traffic stop. Although there is no evidence of Appellant's mental acumen, there is
some indication that this incident was not his first encounter with law enforcement officials. 
There is nothing in the record to indicate that Appellant was under arrest, handcuffed, or
otherwise physically restrained nor was Appellant held at gunpoint at any time during the
encounter. We are unable to determine from the record the length of Appellant's detention,
however, the duration of the stop prior to Appellant's consent does not appear to have been
overly excessive. The record reflects no evidence of intimidating or coercive circumstances,
other than the presence of two police officers. See Levi v. State, 147 S.W.3d 541, 545
(Tex.App.--Waco 2004, pet. ref'd)(mere presence of police officers not evidence of coercion or
intimidation). Further, there is no evidence of any threat, inducement, or promise, either express
or implied, which might indicate that consent may not have been freely and voluntarily given. 
Finally, it appears that Trooper Mata may have advised Appellant that he could refuse to give
consent to search. (2)

 Appellant relies heavily on the fact that Trooper Mata apparently repeated his request for
consent to search. At the suppression hearing, Trooper Mata testified that when he first asked
Appellant for permission to search his vehicle, Appellant replied that "I can't give you that
because it's not my vehicle, "I'm not the owner of the vehicle," or "I can't answer that." On
cross-examination, Trooper Mata stated that Appellant told him that he could not grant
permission. In response, Trooper Mata explained to Appellant that although he was not the
owner, he could consent to a search of the vehicle because he exercised care, custody, and control
of the vehicle. According to Trooper Mata, in response to this statement, Appellant affirmatively
gave him permission to search. (3) Even if we were to characterize Appellant's initial response was
an outright refusal, repeated requests are only one of the factors considered in evaluating the
voluntariness of the later consent. See Vargas v. State, 18 S.W.3d 247, 254 (Tex.App.--Waco
2000, pet. ref'd).

 Looking at the totality of the circumstances and viewed in the light most favorable to the
trial court's ruling, we conclude the record supports a finding by clear and convincing evidence
that Appellant gave his consent freely and voluntarily. Accordingly, the trial court did not err in
denying Appellant's motion to suppress. Issue Two is overruled. (4)

 We affirm the trial court's judgment.



May 24, 2007

 DAVID WELLINGTON CHEW, Chief Justice


Before Chew, McClure, and Carr, JJ.


(Do Not Publish)
1. In his brief, Appellant concedes that both the initial stop and the continued detention of
Appellant were reasonable.
2. Appellant represents in his brief that Trooper Mata explained to him "that the law did
indeed place him in the position to allow a search or not allow a search." Appellant goes on to
say that "appellant was backed into a corner, without knowing he had the right to refuse
consent." The State unequivocally indicates in its brief that Trooper Mata "informed the
appellant that he could give consent, but also of his right to refuse consent." [Emphasis in
original]. The testimony of Trooper Mata at the suppression hearing was less than clear. 
However, even if Trooper Mata failed to inform Appellant of his right to refuse consent, this is
only one factor we consider in reviewing the totality of the circumstances. Johnson v. State, 68
S.W.3d 644, 653 (Tex.Crim.App. 2002).
3. Appellant's precise response to Trooper Mata's advice that he could consent to the
search because he exercised care and control of the vehicle is not clear. Also, the police report,
which was referenced during the hearing, was not made a part of the record. At the suppression
hearing, the following exchange occurred:


 Q: So, he stated to you that you did not have permission to search the vehicle;
correct?


 A: Yes, sir.


 Q: You then continued to -- I want to use the word 'advise' Officer; but, he'd
already made a contradiction. He had already said 'no;' so, I'm going to --


 A: He didn't say 'no.'


 Q: Okay. He said you could not have permission to search the vehicle?


 A: 'I cannot grant permission.'


. . .



 Q: Okay. And that's when you say that he said, 'I guess so'?


 A: (Witness nods)


 Q: And what does 'I guess so' mean to you? Does it mean 'yes'?


 A: He said, 'Yeah.' 'Yeah' is usually associated with 'yes.'


 Q: And that's here in your report. 'He said, "Yeah, I guess;"' right? And,
then, it's at that point that you said you opened the door and you could
smell the marijuana?
4. Because we find that Appellant consented to the search of his vehicle freely and
voluntarily, we do not address Appellant's argument in Issue One that Trooper Mata lacked
probable cause to conduct a warrantless search of his vehicle.