COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-06-193-CR

 

 

JOHNNY BEALL JR.                                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM THE 211TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

                                              ------------

Appellant Johnny Beall Jr. appeals from his
conviction for possession of less than one gram of methamphetamine.  In five points, he argues that the trial
court erred by denying his motion to suppress and that the evidence is legally
and factually insufficient to show that he possessed the drugs in
question.  We affirm.








                                            Background

Appellant was indicted for possession of
methamphetamine after police discovered the drugs in a boot next to the
pull-out couch where Appellant slept in a Denton motel room.  Appellant filed a motion to suppress, and the
trial court heard and denied the motion immediately before trial.  The following evidence, drawn from both the
suppression hearing and the trial, is relevant to Appellant=s points
on appeal.

Denton Police Officer Paul Willenbrock testified
at the suppression hearing and at trial. On January 1, 2006, Officer
Willenbrock responded to a call from the desk clerk at the Comfort Suites motel
in Denton.  The clerk said she had
received a phone call from a man who said his wife was doing drugs in room 222
while his daughter was present in the room. 
The clerk told Officer Willenbrock room 222 was registered to Ronnie Beall,
and she gave Officer Willenbrock a photocopy of Ronnie=s driver=s
license.  Officer Willenbrock ran Ronnie=s
license through his computer and learned that Ronnie had a warrant outstanding
for his arrest. 








Officer Willenbrock called for backup, and
Officers Buchanan and Nair responded to his call.  Together, the officers went to room 222 and
knocked on the door.  Ronnie answered the
door and presented a driver=s
license when asked to identify himself. 
Officer Willenbrock handed the license to Officer Buchanan to verify the
outstanding warrant.  Officer Willenbrock
testified that he then asked Ronnie for permission to enter the room and Ronnie
consented.          Officer Willenbrock found three people in the room:  Ronnie, Appellant, and a woman later
identified as Rebecca Yeary; the child made the basis of the original complaint
was not there.  He initially testified
that he saw Appellant immediately upon entering the room, but later conceded
that Appellant might have been in the shower. 
Officer Willenbrock awakened Yeary, who was asleep on one of the two
beds in the room, and asked her where her daughter was.  While doing so, he noticed a Abutane
torch lighter@ of a kind he associated with
drug use on the bedside table.  








Officer Buchanan confirmed the warrant for Ronnie=s
arrest, and Officer Willenbrock placed him under arrest.  Officer Willenbrock testified that he then Asearched
the area around where I arrested him@ within
a radius of six feet.  In a trash can, he
found a film canister containing marijuana cigarette butts and a glass pipe of
the kind used for smoking drugs.  Officer
Willenbrock asked Appellant and Yeary if there were any more drugs in the room;
they told him Ano.@  Because there were only two beds in the room,
Officer Willenbrock asked Appellant where he slept; Appellant indicated a
pull-out couch in the back of the room. 
Officer Willenbrock testified that he then asked Appellant if he could
search the area around the pull-out couch and that Appellant consented to the
search.  Officer Willenbrock testified
that he asked for Appellant=s permission
to search the area A[b]ecause what I had so far didn=t give
me probable cause to search the entire hotel room.@ 

Near the pull-out couch, Officer Willenbrock
found a bag of clothing and a pair of boots. 
Inside one of the boots he saw a black leather pouch.  He removed the pouch from the boot, opened
it, and discovered three cellophane baggies containing what he believed to be
marijuana, a Ziploc baggie containing what appeared to be methamphetamine, and
a marijuana pipe, some pipe filters, and rolling papers.  Officer Willenbrock arrested Appellant.  He testified that Appellant then said Ait was
for his personal use, and he apologized for lying about the drugs in the room.@  Officer Willenbrock also said that Appellant=s
appearance at the time of his arrest was consistent with drug use. 

Appellant testified briefly at the suppression
hearing but not at trial.  He said he was
in the shower when the police knocked on the door, and they were already
searching through his belongings when he came out of the shower.  He denied that anyone asked him for consent
to search the area around the pull-out couch and denied having said the drugs
were for his personal use; he testified, somewhat ambiguously, AI may
have apologized for the drugs being found, but not saying they were mine.@ 








Officer Buchanan testified at trial.  He confirmed that Officer Willenbrock asked
Appellant for permission to search the area near the couch and Appellant
consented.  He also testified that after
Officer Willenbrock found the drugs, Appellant said the drugs belonged to him
for his personal use and apologized for lying to the officers. 

Ronnie also testified at trial.  He said Appellant was in the shower when the
police knocked on the door and did not come out until the police had already
handcuffed Ronnie.  He did not hear the
officers ask Appellant for consent to search his belongings.  Nor did he hear Appellant say that the drugs
were his or apologize for lying to the officers, but he volunteered, AI couldn=t really
hear.@ 

The trial court denied Appellant=s motion
to suppress.  A jury convicted Appellant
of possession of methamphetamine of less than one gram and assessed punishment
at two years= confinement, and the trial
court rendered judgment accordingly. 
This appeal followed.

                                             Discussion

A.              
Motion to Suppress








In
his first three points, Appellant argues that trial court erred by denying his
motion to suppress because the police had no legal justification for entering
the motel room or for remaining in the motel room after they arrested Ronnie
and that the search which discovered the methamphetamine violated his rights
under the United States and Texas Constitutions and the Texas Code of Criminal
Procedure.[1]  Stated another way, Appellant contends that
the police did not have justification to enter, they did not have justification
to stay, and they did not have justification to search.[2]

1.               
Standard of review








We
review a trial court=s ruling on a motion to suppress
evidence under a bifurcated standard of review. 
Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court=s decision, we do not engage in our
own factual review.  Romero v. State,
800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best v. State, 118 S.W.3d
857, 861 (Tex. App.CFort Worth 2003, no pet.).  The trial judge is the sole trier of fact and
judge of the credibility of the witnesses and the weight to be given their
testimony.  State v. Ross, 32
S.W.3d 853, 855 (Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d
889, 891 (Tex. Crim. App. 1999). 
Therefore, we give almost total deference to the trial court=s rulings on (1) questions of
historical fact, even if the trial court=s determination of those facts was not based on an evaluation
of credibility and demeanor, and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Montanez v. State, 195 S.W.3d 101,
108-09 (Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort Worth 2004, pet. ref=d). 
But when the trial court=s rulings do not turn on the
credibility and demeanor of the witnesses, we review de novo a trial court=s rulings on mixed questions of law
and fact.  Estrada v. State, 154
S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652‑53.








Stated
another way, when reviewing the trial court=s ruling on a motion to suppress, we must view the evidence
in the light most favorable to the trial court=s ruling.  State v.
Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the record is silent on the reasons for
the trial court=s ruling, or when, as here, there are
no explicit fact findings and neither party timely requested findings and
conclusions from the trial court, we imply the necessary fact findings that
would support the trial court=s ruling if the evidence, viewed in
the light most favorable to the trial court=s ruling, supports those findings.  Id. 
We then review the trial court=s legal ruling de novo unless the implied fact findings
supported by the record are also dispositive of the legal ruling.  Id.

In determining whether a trial court=s
decision is supported by the record, we generally only consider evidence
adduced at the suppression hearing only because the ruling was based on it
rather than on evidence introduced later.  Rachal v. State, 917 S.W.2d 799, 809
(Tex. Crim. App.), cert. denied, 519 U.S. 1043 (1996).  But this general rule is inapplicable where
the suppression issue has been consensually relitigated by the parties during
the trial on the merits.  Id.  Where the State raises the issue at trial
either without objection or with subsequent participation in the inquiry by the
defense, the defendant has made an election to re‑open the evidence, and
consideration of the relevant trial testimony is appropriate in our review.  Id. 
In this case, the parties relitigated the suppression issue when
both parties offered evidence relevant to the issue at trial and Appellant
renewed his motion to suppress when the State rested.  We will, therefore, consider both the
evidence presented at the suppression hearing and the evidence presented at
trial.

2.               
Applicable Law








Under
the Fourth Amendment, a search conducted without a warrant issued on probable
cause is per se unreasonable unless it falls within one of the well‑established
exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412
U.S. 218, 219, 93 S. Ct. 2041, 2043‑44 (1973); Reasor v. State, 12
S.W.3d 813, 817 (Tex. Crim. App. 2000). 
Consent to search is one of the well‑established exceptions to the
constitutional requirements of both a warrant and probable cause.  Carmouche, 10 S.W.3d at 331 (citing Schneckloth,
412 U.S. at 219, 93 S. Ct. at 2043‑44). 
Article 38.23 of the code of criminal procedure precludes the admission
of evidence obtained in violation of the Constitution.  Tex.
Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2006).

3.               
Justification to enter

Appellant
argues that his suppression-hearing testimony and Ronnie=s trial testimony establish that he
was in the shower when the police entered the motel room; therefore, argues
Appellant, he could neither consent nor object to the entry, and any evidence
seized must be suppressed despite Ronnie=s consent to the entry. 
Appellant relies on the Supreme Court=s opinion in Georgia v. Randolph to support his
argument.  547 U.S. 103, 126 S. Ct. 1515
(2006).








Randolph does not support Appellant=s argument.  In that case, the defendant=s wife told police that the defendant
had drugs inside the communal home.  Id.
at 107, 126 S. Ct. at 1519.  An officer
asked the defendant for permission to search the home, which he unequivocally
refused.  Id.  The officer turned to the wife for
consent, which she readily gave.  Id.  She led the officer upstairs to a bedroom
that she identified as the defendant=s, where the officer found a drinking straw with a powdery
residue he suspected was cocaine.  Id.  Police then obtained a warrant, searched the
house, and seized further evidence of drug use, on the basis of which the
defendant was indicted for possession of cocaine.  Id. 
The defendant unsuccessfully moved to suppress the evidence as
products of a warrantless search of his house over his express refusal.  Id.

The
Supreme Court noted that the Fourth Amendment, while ordinarily prohibiting the
warrantless entry of a person=s home as unreasonable per se,
recognizes the validity of searches with the voluntary consent of an individual
possessing authority or a fellow occupant who shares authority over
property.  Id. at 109, 126 S. Ct.
at 1520.  But where one cotenant gives
consent and the other cotenant is present and objects, the Adisputed invitation, without more,
gives a police officer no better claim to reasonableness in entering than the
officer would have in the absence of any consent at all.@ 
Id. at 114, 126 S. Ct. at 1523. 
In other words, disputed consent is no consent.  See id. at 115, 126 S. Ct. at
1524 (ADispusted permission is thus no match
for this central value of the Fourth Amendment[.]@).








Appellant
acknowledges the key difference between this case and Randolph; unlike
the defendant in Randolph, Appellant did not object to the officers= entry into the motel room.  But Appellant argues that he had no
opportunity to object because he was in the shower when the police
arrived.  Appellant urges us to clarify Randolph=s Aprotections . . . as they apply to co-occupants who are
readily available and present on the premises but not part of the initial
encounter with the police at the inception of the entry . . . .@ 








For
the clarification Appellant seeks regarding Randolph, we need not look
beyond Randolph itself.  Tying up
a Aloose end@ created by its holdings in two other
cases, the Supreme Court held that Awe have to admit that we are drawing a fine line; if a
potential defendant with self-interest in objecting is in fact at the door and
objects, the co-tenant=s permission does not suffice for a
reasonable search, whereas a potential objector, nearby but not invited to take
part in the colloquy, loses out.@  Id. at 121,
126 S. Ct. at 1527.  The Supreme Court
distinguished the facts in Randolph from the facts in the two other
cases,  Matlock, where the
defendant was not present and did not have the opportunity to object to a
search to which his cotenant consented, but he was in a squad car not far away;
and Rodriguez, where the defendant was asleep in a bedroom when his
cotenant admitted police to their communal residence.  Id. (distinguishing Illinois v.
Rodriguez, 497 U.S. 177, 180, 110 S. Ct. 2793, 2797 (1990) and United
States v. Matlock, 415 U.S. 164, 166, 94 S. Ct. 988, 991 (1974)).  The Court upheld the validity of the entries
and searches in both Rodriguez and Matlock.  Rodriguez, 497 U.S. at 189, 110 S. Ct. at
2801; Matlock, 415 U.S. at 177, 94 S. Ct. at 996.[3]

The
case before us is factually similar to Matlock and even more so to Rodriguez.  Appellant, like the defendants in Matlock
and Rodriguez, stands on the wrong side of the Afine line@ drawn by the Supreme Court in Randolph;
as a potential objector, nearby but not invited to take part in the colloquy
between Ronnie and the police, he loses out. 
See Randolph, 547 U.S. at 121, 126 S. Ct. at 1527.

4.               
Justification to stay

Appellant
next argues that even if the officers= entry was justified by Ronnie=s consent, that justification ended when they verified the
girl made the subject of the initial complaint was not there, arrested Ronnie,
and completed their search incident to Ronnie=s arrest.  We disagree.








In
Reasor v. State, the court of criminal appeals held that a defendant=s consent to search his house, given
after police illegally entered the house to conduct a Asecurity sweep,@ attenuated the taint of the illegal
entry.  12 S.W.3d 813, 819 (Tex. Crim.
App. 2000).  The same logic applies to
this case.  Assuming for the sake of
argument that the officers= continued presence in the motel room
after they had completed Ronnie=s arrest and the related search was
an illegal Aentry,@ Appellant=s consent to the search of the area
around his bed removed the taint of that entry. 
In other words, under these circumstances the consent to search
necessarily implied the consent to remain in the motel room long enough to
complete the search, just as the defendant=s consent to search in Reasor implied his consent for
police to remain in his house after their initial, illegal entry.  Therefore, we hold that Appellant=s consent to searchCassuming for the moment his consent
was validCjustified the officers= continued presence in the motel
room.

5.               
Justification to search

Finally,
Appellant argues that his consent to search (which he denied having given) was
involuntary because he was effectively detained by police.  Again, we disagree.








In
Schneckloth, the United States Supreme Court considered the definition of Avoluntary consent@ in the context of a search and
seizure.  412 U.S. at 219, 93 S. Ct. at
2044.  AWhen the subject of a search is not in custody and the State
attempts to justify a search on the basis of his consent, the Fourth and
Fourteenth Amendments require that it demonstrate that the consent was in fact
voluntarily given, and not the result of duress or coercion, express or
implied.@  Id. at 248, 93 S. Ct. at 2059.  Voluntariness is a question of fact to be
determined from the totality of the circumstances.  Id. at 249, 93 S. Ct. at 2059.  The Texas Constitution requires that the
State prove by clear and convincing evidence that consent was voluntarily
given.  Tex. Const. art. I, ' 9; Montanez
v. State, 195 S.W.3d 101, 105 (Tex. Crim. App. 2006); Carmouche, 10
S.W.3d at 331.

When
determining voluntariness, courts consider various factors, including whether
the consenting person was in custody, whether he was arrested at gunpoint,
whether he had the option of refusing consent, the constitutional advice given
to the accused, the length of detention, the repetitiveness of the questioning,
and the use of physical punishment.  See
Reasor, 12 S.W.3d at 818; Laney v. State, 76 S.W.3d 524, 532 (Tex.
App.CHouston [14th Dist.] 2002), aff'd,
117 S.W.3d 854 (Tex. Crim. App. 2003).  A
warning that an individual does not have to consent to a search and has the
right to refuse is not required nor essential. 
Meeks v. State, 692 S.W.2d 504, 510 (Tex. Crim. App. 1985).








In
this case, Appellant was not in custody, he was not arrested at gunpoint, and
he was not subjected to repetitive questioning or physical punishment.  On the other hand, the officers did not
inform him that he had the right to withhold his consent.  Assuming without deciding that Appellant was Adetained@ while officers arrested Ronnie, the
record suggests that the detention was of short duration.

Deferring,
as we must, to the trial court=s resolution of the conflict between
Officer Willenbrock=s and Appellant=s testimony as to whether Officer
Willenbrock asked for Appellant=s consent to search, and considering
the totality of the circumstances surrounding Appellant=s consent, we hold that Appellant=s consent was voluntary and justified
the officers= search of the area around his bed.

In
summary, the officers= entry into the motel room was
justified by Ronnie=s consent to their entry.  Their search of the area around Appellant=s bed was justified by Appellant=s consent, as was their remaining in
the room long enough to conduct that search. 
Therefore, the trial court did not err by denying Appellant=s motion to suppress, and we overrule
his first three points.

 

 

 








B.               
Sufficiency of the evidence to show possession

In
his fourth and fifth points, Appellant argues that the evidence is legally and
factually insufficient to show that he exercised actual care, control, custody,
or management over the drugs recovered from the boot by his bed.  

1.               
Standard of review

When
reviewing the legal sufficiency of the evidence to support a conviction, we
view all the evidence in the light most favorable to the verdict in order to
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Hampton v. State, 165 S.W.3d 691, 693
(Tex. Crim. App. 2005).








When
reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party.  Watson v. State, 204 S.W.3d 404, 414
(Tex. Crim. App. 2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex.
Crim. App. 2005).  We then ask whether
the evidence supporting the conviction, although legally sufficient, is
nevertheless so weak that the fact-finder=s determination is clearly wrong and manifestly unjust or
whether conflicting evidence so greatly outweighs the evidence supporting the
conviction that the fact-finder=s determination is manifestly
unjust.  Watson, 204 S.W.3d at
414-15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

2.               
Applicable law

To support a conviction for unlawful possession
of a controlled substance, the State must affirmatively link the accused to the
contraband by proving that the accused (1) exercised control, management, or
care over the contraband and (2) knew the substance he possessed was
contraband.  See Tex. Health & Safety Code Ann. ''
481.002(38), 481.112(a) (Vernon 2005); Poindexter v. State, 153 S.W.3d
402, 405-06 (Tex. Crim. App. 2005); Brown v. State, 911 S.W.2d 744, 747
(Tex. Crim. App. 1995).  Under the Aaffirmative
links@ rule,
when the accused is not in exclusive possession of the place where the
substance is found, it cannot be concluded that he had knowledge of and control
over it unless there are additional independent facts and circumstances which
affirmatively link him to the contraband. 
Poindexter, 153 S.W.3d at 406. 
That is, the evidence must establish, to the requisite level of
confidence, that the accused=s
connection with the drug was more than just fortuitous.  Id. at 405-06; Tucker v. State,
183 S.W.3d 501, 510 (Tex. App.CFort
Worth 2005, no pet.).








Affirmative links can be proven by direct or
circumstantial evidence.  Brown,
911 S.W.2d at 747.  Factors we consider
include (1) Appellant=s presence during the search,
(2) whether the drugs were in plain view, (3) Appellant=s
proximity to and the accessibility of the drugs, (4) whether he was under the
influence of narcotics when arrested, (5) whether he possessed other contraband
or narcotics when arrested, (6) whether he made incriminating statements when
arrested, (7) whether he attempted to flee, (8) whether he made furtive
gestures, (9) whether there was an odor of the contraband, (10) whether other
contraband or drug paraphernalia were present, (11) whether he owned or had the
right to possess the place where the drugs were found, (12) whether the place
where the drugs were found was enclosed, (13) whether he was found with a large
amount of cash, and (14) whether his conduct indicated a consciousness of
guilt.  See Tucker, 183 S.W.3d at
510.  The number of relevant factors is
less significant than the logical force of the link they establish between the
accused and the controlled substance.  See
Hudson v. State, 128 S.W.3d 367, 374 (Tex. App.CTexarkana
2004, no pet.).  

Affirmative links are established by the totality
of the circumstances.  See Wootton v. State,
132 S.W.3d 80, 87 (Tex. App.CHouston
[14th Dist.] 2004, pet. ref=d).  In deciding whether the evidence is
sufficient to link a defendant to contraband, the trier of fact is the
exclusive judge of the credibility of the witnesses and the weight to be given
to their testimony.  Poindexter,
153 S.W.3d at 406.








3.               
Affirmative links

In this case, there is direct and compelling
evidence of the sixth Tucker factor, whether Appellant made
incriminating statements when arrested: 
Officers Willenbrock and Buchanan testified that Appellant told them
that the drugs were for his personal use. 
While there is little or no evidence of the circumstantial Tucker
factors, other circumstantial evidence that does not fit neatly into the Tucker
list supports an affirmative link between Appellant and the drugs.  They were found in a boot next to the bed
where he slept.[4]  Officer Willenbrock testified that Appellant=s
appearance at the time of his arrest was consistent with drug use. 

Viewing the direct and circumstantial evidence in
the light most favorable to the verdict, we hold that the evidence of
affirmative links between Appellant and the drugs is legally sufficient to
support the jury=s verdict that he possessed the
drugs.  Viewing the evidence in a neutral
light, we hold that it is also factually sufficient.  Therefore, we overrule Appellant=s fourth
and fifth points.

 

 








                                             Conclusion

Having overruled all of Appellant=s
points, we affirm the trial court=s
judgment.

 

 

ANNE
GARDNER

JUSTICE

 

PANEL F:    DAUPHINOT,
HOLMAN, and GARDNER, JJ.

 

PUBLISH

 

DELIVERED:  October 4, 2007











[1]We address Appellant=s Fourth Amendment and article I, section 9 arguments
together because he failed to separately argue and brief those contentions.  See Riddle v. State, 888 S.W.2d 1, 7‑8
(Tex. Crim. App. 1994), cert. denied, 514 U.S. 1068 (1995); Arnold v.
State, 873 S.W.2d 27, 29 n.2 (Tex. Crim. App. 1993), cert. denied,
513 U.S. 830 (1994).





[2]The State argues that Appellant forfeited these points
by failing to raise them in the trial court. 
We disagree.  When read together,
the written motion to suppress and counsel=s oral argument at the suppression hearing fairly
encompass the points raised and argued on appeal.





[3]The key issue in Rodriguez was whether the
police reasonably believed the Acotenant,@ who they later learned did not actually live in the
residence, had authority to consent to their entry.  Rodriguez, 497 U.S. at 177, 110 S. Ct.
at 2795).   The Supreme Court held that
if the police reasonably believed she had such authority, then the entry was
reasonable, and it remanded the case for further proceedings to determine
whether the officers= belief was reasonable.  Id. at 188-89, 110 S. Ct. 2801-02.





[4]Appellant argues that the evidence supports the
conclusion that the boots belonged to Ronnie because Ronnie was barefoot when
arrested.  But Ronnie=s
testimony that Appellant was in the shower when the police entered the room
supports the equally reasonable conclusion that Appellant was barefoot, too,
and that the boots belonged to him.