**Opinion issued January 17, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-01115-CR

————————————

**JOEL HERNANDEZ FIGUEROA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Case No. 1192076**

---

## MEMORANDUM OPINION

After the trial court denied his motion to suppress evidence, Joel Figueroa pleaded guilty to the offense of possession with intent to deliver a controlled substance, namely, cocaine, weighing at least 400 grams without an agreed

recommendation as to punishment.[1] The trial court adjudged Figueroa guilty and assessed punishment at sixteen years' confinement. Figueroa appeals his conviction, contending in four issues that: (1) he was denied due process because the prosecution withheld material and exculpatory evidence from defense counsel in violation of the duty owed under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), and (2) the trial court erred in not suppressing the cocaine found in his vehicle because the police did not have reasonable suspicion to stop his vehicle, the police did not have probable cause to arrest him before the cocaine was discovered, and he did not consent to a search of the vehicle. The State rejects Figueroa's contentions but presents a cross-point on appeal, complaining that Figueroa's sentence is void because the trial court assessed a term of incarceration without also assessing a mandatory fine and therefore a new punishment hearing is required. We affirm in part and reverse and remand in part.

**Background**

Figueroa was arrested and charged with the felony offense of possession with intent to deliver a controlled substance weighing at least 400 grams when Officer C. Kowis, a deputy with the Houston Police Department's narcotics unit, discovered a brick of cocaine in Figueroa's vehicle. Figueroa moved to suppress the cocaine on the ground that his initial detention, his subsequent arrest, and the

---

[1]     *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) & (f) (West 2010).

search of his vehicle were unlawful. Only two witnesses testified at the suppression hearing: Kowis and Figueroa. The two men gave considerably different accounts of the events preceding the charge against Figueroa.

Officer Kowis testified that, after receiving an anonymous tip that illicit drugs were being trafficked through a Houston-area home, members of the HPD narcotics unit set up surveillance. Kowis was standing-by in a marked patrol car a few blocks from the home when he was notified by surveillance officers that Figueroa had departed the home. When Figueroa drove by Kowis, Kowis could see through the open driver's side window that Figueroa was not wearing a seatbelt. Kowis followed Figueroa and observed him make an unsafe lane change without signaling, nearly striking another vehicle. Kowis then initiated a traffic stop based on the three traffic offenses he had observed: (1) failure to wear a seat belt, (2) making an unsafe lane change, and (3) failure to use a signal.

As he approached Figueroa's vehicle, Officer Kowis observed a rectangular object on the back passenger-side floorboard through an open rear window. Officer Kowis could not recall whether the rear window, which was heavily tinted, was open when he approached Figueroa's vehicle or whether he ordered Figueroa to roll it down for officer safety. Kowis described the rectangular object as being wrapped in plastic and duct tape, which packaging, based on Kowis's experience in the narcotics unit, was consistent with a kilogram of cocaine. Kowis instructed

3

Figueroa to exit the vehicle but did not place him under arrest. Immediately upon exiting the vehicle and without any prompting from Kowis, Figueora stated, "[I]t's all I got. You can look. I only have one." Kowis interpreted Figueroa's statement as consent to search of the vehicle. Kowis did not reduce Figueroa's consent to writing, and Kowis's patrol car did not have a camera or any other recording device that captured the exchange. Kowis instructed Figueroa to sit on the curb while Kowis retrieved the package from the car. Kowis field-tested the substance in the package and determined it was cocaine. Kowis testified that Figueroa was not handcuffed when he stepped out of the car or when he sat on the curb. It was not until after the package tested positive for cocaine that Figueroa was formally arrested. No traffic citation was issued.

On cross-examination, Figueroa's counsel cross-examined Officer Kowis about statements in his arrest report that were inconsistent with his suppression-hearing testimony. For instance, despite his testimony that he was parked near the surveillance location in a marked patrol car at the request of other narcotics officers, Kowis agreed that in his arrest report, he stated, "I was traveling northbound on Evergreen, a two-way public roadway. . . . While doing so, I observed a green 2006 Chrysler 300 [Figueroa's car] . . . traveling in the same direction." The arrest report failed to mention either the anonymous tip or the surveillance of the home from which Figueroa was seen leaving.

4

Figueroa's counsel complained that Kowis's testimony at trial was the first the defense had heard of the anonymous tip and surveillance; until that point, the State had informed the defense that a random traffic stop contributed to Figueroa's arrest. Kowis explained: "[Figueroa] was stopped for committing traffic offenses. The traffic offenses that I stopped him for led me to locate the kilogram of cocaine. The only reason why I started looking at him[,] a pretext stop, if you will, is because he was at that location [the house under surveillance], that's correct. But, I didn't stop him for leaving the location; I stopped him for a traffic offense." When asked whether he told any prosecutor about the anonymous tip, Kowis initially answered "no." The following exchange occurred, however, in response to further questioning:

> Q. [Defense Counsel:] If a prosecutor asked you at my request, what, if any, information did the officer have, who is a narcotics officer, to stop, before he stopped the automobile, did any officer - - did any Assistant District Attorney ask you that question?
>
> A. [Kowis:] Yes.
>
> Q. Okay. And did you tell them you had no information?
>
> A. No, I did not.
>
> Q. You told them you had this information?
>
> A. Yes, sir, I did.
>
> Q. And will you tell me which - - you're pointing over to the prosecution?

A.    Yes.

Q.    Well, do you understand that she has only been on this case for a couple of weeks?

A.    You know that she's the first one that I talked about this case in depth about?

Q.    I did not know that.

A.    Yes, sir. And the first day I spoke to her, I believe she asked me, did you have an informant, and I said, no, ma'am I didn't. And she said, did you have any information on the house, and I said, yes, ma'am, I did.

Figueroa testified to an entirely different series of events. Through the presentation of his defense, Figueroa implied that Officer Kowis had baited the traffic stop. Specifically, Figueroa testified that, while driving, he saw lights flashing behind his vehicle. Believing the lights were an emergency vehicle needing to pass, Figueroa quickly changed lanes. He could not remember whether he signaled the lane change. He further testified that he wore his seatbelt at all times, including on the day he was stopped by Officer Kowis, and that his driver's side window was rolled up. Figueroa recalled that Kowis got out of the patrol car with his gun drawn and instructed Figueroa to show his hands and then to get out of the vehicle. Figueroa complied, first rolling down the driver's side window, extending his arms through the driver's side window to show his hands, and then exiting the vehicle. As soon as Figueroa was out of the vehicle, Kowis grabbed Figueroa by his belt from behind and pressed him against the vehicle. Also

6

according to him, Kowis never instructed Figueroa to roll the rear window down; rather, another officer, who arrived on the scene after Kowis, got out of his vehicle, walked straight to Figueroa's car, and retrieved the package of cocaine. The second officer told Kowis, "[W]e got it." Kowis handcuffed Figueroa and asked whether Figuero had anything else. Figuero stated, "No, that is all I have."

After the close of evidence and arguments by the parties, the trial court denied Figueroa's motion to suppress, specifically finding that (1) Figueroa was not a credible witness but (2) Officer Kowis was credible; (3) Kowis witnessed Figueroa commit three traffic violations; (4) Kowis, while approaching Figueroa's vehicle, observed "in plain view a rectangular object in a size and packaging that would have been consistent with a kilo of cocaine"; (5) probable cause existed to seize the cocaine; (6) Figueroa was not in custody at the time he stated, "[I]t's all I got. You can look. I only have one"; and (8) Figueroa freely and voluntarily consented to the search of his vehicle.

Figueroa filed a timely motion for new trial, alleging the State violated *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), by failing to disclose the existence of the anonymous tip and narcotics surveillance before the suppression hearing. The motion for new trial was overruled by operation of law, and Figueroa appealed.

7

**Untimely Disclosure of *Brady* Material**

Figueroa did not request a continuance of the suppression hearing once it was discovered that the police had received an anonymous tip before his arrest. Instead, after the trial court rendered its judgment finding him guilty, he filed a motion for new trial on the ground that he was denied due process rights because the State or its agents withheld material and exculpatory evidence in violation of its duty under *Brady*.[2] Figueroa contends in his first issue on appeal that the trial court erred by denying his new trial motion. The State responds that Figueroa waived his *Brady* claim by not seeking a continuance of the suppression hearing.

A defendant in a criminal case has no general right to pretrial discovery of evidence in the State's possession. *See Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S. Ct. 837, 846 (1977); *Pena v. State*, 353 S.W.3d 797, 809 n.10 (Tex. Crim. App. 2011). Under *Brady* and its progeny, however, there exists a federal constitutional right to certain minimum discovery. *See United States v. Bagley*, 473

---

[2]     Figueroa also complains, in connection with his *Brady* argument, that another "practical effect" of the State's untimely disclosure of the tipster's existence is that other "potentially useful evidence" has "certainly been destroyed." To the extent Figueroa's complaint states a separate issue regarding the State's failure to preserve evidence under *Arizona v. Youngblood*, 488 U.S. 51, 109 S. Ct. 333 (1988), Figueroa has not met his burden. Unless a defendant can demonstrate bad faith on the part of the State, the failure to preserve potentially useful evidence does not constitute a denial of due process. *See Youngblood*, 488 U.S. at 58, 109 S. Ct. at 337; *Ex parte Brandley*, 781 S.W.2d 886, 894 (Tex. Crim. App. 1989); *see also Johnson v. State*, No. 14-02-00663-CR, 2003 WL 1988593, at *2 n.2 (Tex. App.—Houston [14th Dist.] May 1, 2003, no pet.) (not designated for publication). Figueroa has failed to allege any bad faith on the part of the State.

8

U.S. 667, 675, 105 S. Ct. 3375, 3379−80 (1985) (explaining that *Brady* rule is based on requirement of due process); *United States v. Agurs*, 427 U.S. 97, 107, 96 S. Ct. 2392, 2399 (1976) (explaining that *Brady* deals with "the defendant's right to a fair trial mandated by the Due Process Clause of the Fifth Amendment[.]"); *Pena*, 353 S.W.3d at 809. That right is violated only if: (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to the accused; and (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the proceeding would have been different. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002).

We presume for the sake of argument that the anonymous tip constitutes *Brady* material. This case, however, does not present the normal *Brady* situation, in which the material or exculpatory evidence comes to light after the defendant has been tried and convicted. In this case, the existence of the anonymous tip was discovered at the beginning of a pretrial suppression hearing, before Figueroa's no contest plea and conviction. Officer Kowis, who was the first witness to testify at the suppression hearing, disclosed the anonymous tip in answer to the State's fifteenth question. The State's first through fourteenth questions, and Kowis's responses to those questions, addressed mostly introductory matters (name,

9

occupation, experience) and occupied only two pages of the more than 135-page transcript.

When the State's failure to disclose *Brady* material is discovered during trial, the defendant is entitled to a recess to obtain production of the material. *See Crawford v. State*, 892 S.W.2d 1, 4 (Tex. Crim. App. 1994). The opportunity to request a continuance once *Brady* material is disclosed at trial adequately protects due process. *See Payne v. State*, 516 S.W.2d 675, 677 (Tex. Crim. App. 1974) (noting that due process is satisfied when defendant is granted postponement or continuance in wake of late-disclosed evidence). When an accused fails to request a continuance, however, he waives any error resulting from the State's failure to disclose evidence. *See Lindley v. State*, 635 S.W.2d 541, 544 (Tex. Crim. App. 1982) ("The failure to request a postponement or seek a continuance waives any error urged in an appeal on the basis of surprise."); *see also State v. Fury*, 186 S.W.3d 67, 74 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (noting that defendant's "failure to request a continuance waives any complaint regarding th[e] 'newly discovered evidence'"); *State v. DeLeon*, 971 S.W.2d 701, 706 (Tex. App.—Amarillo 1998, pet. ref'd) ("If the State waits until trial before disclosing

10

*Brady* material and the defendant fails to request a continuance, the defendant waives any error resulting from the *Brady* violation.").[3]

The record does not reflect that Figueroa requested a continuance of the suppression hearing or otherwise sought to postpone the proceedings at any point after Officer Kowis's disclosure. Even after the presentation of all evidence in the suppression hearing, Figueroa did not move the trial court for any relief based on the newly discovered evidence. A continuance would have allowed Figueroa time to discover whether other evidence related to the narcotics surveillance and traffic stop existed, to obtain production of any existing evidence, to address the impact of such evidence, and to develop any necessary response to it. In addition, Figueroa had "agreed with the trial court to have a dispositive motion to suppress hearing, whereby [he] would enter a plea of no contest and the court would grant [him] the right to appeal, should [his] motion be denied." A continuance also would have permitted Figueroa time to consider whether he still wanted to plead guilty or put the case to a jury in light of the newly disclosed evidence. Figueroa's failure to

---

[3]    *See also Alcorta v. State*, No. 14-10-00827-CR, 2011 WL 3672091, at *6 (Tex. App.—Houston [14th Dist.] Aug. 23, 2011, pet. ref'd) (mem. op., not designated for publication) (holding that appellant waived any *Brady* error related to untimely production of documents after jury verdict by failing to request a continuance of the hearing); *Balca v. State*, No. 01-95-00482-CR, 2000 WL 1593790, at *3 (Tex. App.—Houston [1st Dist.] Oct. 26, 2000, pet. ref'd) (not designated for publication) (concluding that appellant waived any error resulting from untimely disclosure of alleged *Brady* material by failing to request continuance of suppression hearing, to object to timing of disclosure as prejudicing defense preparation and presentation, or to withdraw guilty plea).

11

seek any such relief waived the error, if any, resulting from the State's failure to disclose *Brady* material.[4] *See Fury*, 186 S.W.3d at 74 (holding that, by failing to request continuance, defendant waived error regarding evidence not disclosed until cross-examination of complainant at trial); *Taylor v. State*, 93 S.W.3d 487, 502 (Tex. App.—Texarkana 2002, pet. ref'd) (holding that defendant waived *Brady* claim by failing request a continuance of trial); *Williams v. State*, 995 S.W.2d 754, 762 (Tex. App.—San Antonio 1999, no pet.) (citing defendant's failure to request continuance after discovery of alleged *Brady* material as one reason for overruling *Brady* claim on appeal); *see also Lindley*, 635 S.W.2d at 544.

Even had Figueroa requested and been denied a continuance, his *Brady* claim would fail. When there has been an untimely disclosure of evidence, rather than a complete failure to disclose, the inquiry becomes whether the defendant was prejudiced by the tardy disclosure. *See Palmer v. State*, 902 S.W.2d 561, 565 (Tex. App.—Houston [1st Dist.] 1995, no pet.). The initial purpose of the suppression hearing was to determine whether Officer Kowis lawfully detained Figueroa and lawfully searched his vehicle. Figueroa argues that the State's failure to disclose the existence of the anonymous tipster and narcotics surveillance is evidence that

---

[4]      Figueroa also failed to obtain rulings on certain pretrial discovery motions, including his motion for disclosure of informer's identity, which alleged that Figueroa had "reason to believe the arresting officers relied on one or more informants in deciding to detain and arrest [him]," and his motion for production of evidence favorable to the accused.

12

Kowis, the State's sole witness, was not credible and that the traffic stop performed by him was pretext for the narcotics investigation. First, as we explain in our discussion of Figueroa's second issue below, Kowis's subjective reason for conducting a traffic stop was not relevant to Figueroa's Fourth Amendment claim. *See State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011) (explaining that reasonable suspicion standard for traffic stop is wholly objective; officer's subjective intent is irrelevant). And second, the State's disclosure came at a time when Figueroa's counsel could—and did—put the material to effective use at the suppression hearing. Figueroa's counsel thoroughly cross-examined Kowis regarding his subjective reasons for stopping Figueroa's vehicle and tested Kowis's credibility by inquiring why the narcotics investigation was not mentioned in his arrest report.

For these reasons, we overrule Figueroa's first issue.

### Reasonableness of Search and Seizure

In his second, third, and fourth issues, Figueroa argues that the trial court should have suppressed the evidence recovered from his vehicle because he was denied Fourth Amendment protection from unreasonable searches and seizures when Officer Kowis initiated a stop of Figueroa's vehicle without reasonable suspicion, effectuated an arrest without probable cause, and searched the vehicle without proper authority.

## A.    Standard of Review

In reviewing the trial court's ruling on a motion to suppress evidence, we apply a bifurcated standard of review. *See Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). First, we afford "almost total deference" to the trial court's determinations of historical facts and rulings on mixed questions of law and fact that depend on an evaluation of credibility and demeanor. *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012); *Carmouche*, 10 S.W.3d at 327. The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). She is entitled to believe or disbelieve all or part of the witness's testimony because she has the opportunity to observe the witness's demeanor and appearance. *Id.* When, as here, the trial judge makes express findings of fact, we view the evidence in the most favorable to her ruling and determine whether the evidence supports those factual findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

Second, we review *de novo* the trial court's application of the law of search and seizure to the facts. *Carmouche*, 10 S.W.3d at 327. We will sustain the trial court's ruling if that ruling is "reasonably supported by the record and is correct on any theory of law applicable to the case." *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

**B.      Reasonable Suspicion for Traffic Stop**

Figueroa asserts in his second issue that the weight of the credible evidence does not support the trial court's finding that Officer Kowis witnessed Figueroa commit three traffic violations. According to Figueroa, the evidence established instead that the traffic stop was "pretextual in nature, and that the true and sole motivation for stopping [him] was to conduct a drug investigation."

The Fourth Amendment is not a guarantee against all searches and seizures, but only against unreasonable searches and seizures. *United States v. Sharpe*, 470 U.S. 675, 682, 105 S. Ct. 1568, 1573 (1985). For Fourth Amendment purposes, a traffic stop is a seizure and must be reasonable to be lawful. *Vasquez v. State*, 324 S.W.3d 912, 919 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Davis v. State*, 947 S.W.2d 240, 243−45 (Tex. Crim. App. 1997)). A traffic stop is reasonable if the law enforcement officer was justified in making the stop and his actions during the stop were confined in length and scope to that necessary to fulfill the purpose of the stop. *Id.* (citing *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004)). A traffic stop is justified if the law enforcement officer has a reasonable basis for suspecting that a person has committed a traffic violation. *Id.* (citing *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992)). "Reasonable suspicion" exists if a law enforcement officer "has specific, articulable facts that, combined with rational inferences from those facts, would

15

lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Elias*, 339 S.W.3d at 674. The reasonable suspicion standard is wholly objective; the subjective intent of the officer conducting the investigation is irrelevant. *Id.*

Here, as Figueroa acknowledges, there was conflicting testimony regarding whether Figueroa violated any traffic laws. One the one hand, Officer Kowis testified that he personally witnessed Figueroa commit three traffic violations: (1) failure to wear a seatbelt, (2) making an unsafe lane change, and (3) failing to signal the lane change. Kowis explained more than once that these three violations prompted him to stop Figueroa. On the other hand, Figueroa testified that he was wearing a seatbelt and only switched lanes suddenly to yield to what he believed was an emergency vehicle attempting to pass him. Given the conflicting testimony, whether Kowis had reasonable suspicion to make the traffic stop depended on the credibility of the witnesses. The trial judge's express finding that Kowis's testimony was credible and that Figueroa's testimony was not is dispositive of this issue. As the sole trier of fact, the trial judge was entitled to believe all of Kowis's testimony and none of Figueroa's testimony because she observed their appearances and demeanors at the suppression hearing. *See Ross*, 32 S.W.3d at 855. Viewed in the appropriate light, we hold that the evidence supports the trial

16

court's finding that Figueroa committed three traffic violations and that Kowis was therefore justified in conducting the traffic stop.

Whether Kowis's subjective intent in making the traffic stop was to conduct a drug investigation is irrelevant. *See State v. Gray*, 158 S.W.3d 465, 469−70 (Tex. Crim. App. 2005) (officer entitled to search driver's person and passenger compartment of vehicle after making valid arrest for offense of turning without signaling, despite fact that officer "may have had another subjective motive" for initiating detention); *see also Castro v. State*, 227 S.W.3d 737, 738−39 (Tex. Crim. App. 2007) (failure to signal is valid basis for traffic stop and subsequent search of narcotics); *Garcia*, 827 S.W.2d at 944 (finding that "pretext arrest doctrine" is "no longer viable as a matter of Fourth Amendment jurisprudence. . . . As long as an actual violation occurs, law enforcement officials are free to enforce the laws and detain a person *for that violation*, . . . regardless of the officer's subjective reasons for the detention."). Even if Kowis believed Figueroa was involved in a drug transaction, it was not unlawful to stop Figueroa for failing to use his seatbelt or a signal or for making an unsafe lane change.

We overrule Figueroa's second issue.

## C. Timing of Arrest

Figueroa next complains that the "weight of the credible evidence indicates that, without probable cause, [he] was unlawfully arrested immediately after his

17

vehicle was stopped." The State responds that Figueroa was subject to only an investigative detention when he was stopped and was not arrested until after Officer Kowis's field tests revealed that Figueroa was in possession of cocaine.

A mere investigative detention occurs when a person is temporarily detained for a period of time only long enough for the law enforcement officer to confirm or dispel his reasonable suspicion of criminal activity. *See Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). An arrest, however, involves a greater restraint on a person's freedom of movement. *See State v. Sheppard*, 271 S.W.3d 281, 290−91 (Tex. Crim. App. 2008). "A person is in custody only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Clark v. State*, No. 01-07-00993-CR, 2009 WL 566448, at *3 (Tex. App.—Houston [1st Dist.] Mar. 5, 2009, no pet.) (citing *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996)).

Whether an officer's actions reach the restraint necessary to characterize the occurrence as an arrest does not depend on any bright line test, but must be determined by examining the totality of the circumstances. *See Rhodes v. State*, 945 S.W.2d 115, 119−20 (Tex. Crim. App. 1997); *see also Dowthitt*, 931 S.W.2d at 255 (outlining four general situations that may constitute custody: (1) suspect is physically deprived of his freedom of action in significant way, (2) law

18

enforcement officer tells suspect that he cannot leave, (3) law enforcement officers create situation that would lead reasonable person to believe his freedom of movement has been significantly restricted, and (4) there is probable cause to arrest and law enforcement officers do not tell suspect that he is free to leave). "[C]ases are generally categorized as an 'arrest' or 'detention' depending upon several factors, including the amount of force displayed, the duration of a detention, the efficiency of the investigative process and whether it is conducted at the original location or the person is transported to another location, the officer's expressed intent—that is, whether he told the detained person that he was under arrest or was being detained only for a temporary investigation, and any other relevant factors." *Sheppard*, 271 S.W.3d at 291.

With respect to the course of the interaction between Figueroa and Officer Kowis, the trial judge did not make any explicit factual findings. That is, the trial judge did not expressly find that the interaction was the calm and cooperative exchange described by Kowis. Neither did the trial judge expressly find that, as testified to by Figueroa, Kowis approached the vehicle with gun drawn and immediately subjected Figueroa to physical restraint. However, the trial judge's finding that Kowis was credible indicates that she believed Kowis's testimony. Based on Kowis's testimony, the trial court could reasonably conclude that Figueroa was subject to an investigative detention when his vehicle was stopped,

19

not a custodial arrest. Kowis testified that he stopped Figueroa's vehicle during daylight hours after observing Figueroa commit three traffic violations. Kowis was the only officer on the scene initially. While Kowis had observed the package of cocaine in plain view through an open window, he did not communicate that fact to Figueroa. When Figueroa volunteered, "[I]t's all I got. You can look. I only have one," Kowis asked Figueroa to sit on the curb next to the vehicle. Kowis stated that because Figueroa was calm and cooperative, he did not handcuff Figueroa or otherwise physically restrain him. Kowis testified that he did not physically touch or handcuff Figueroa until the investigation revealed that the substance found in Figueroa's vehicle was cocaine.

Viewed in the light most favorable to the trial court's ruling, this evidence supports a conclusion that although Figueroa was not free to leave while Kowis investigated him, Figueroa was not restrained to the degree associated with an arrest until the drugs field-tested positive for cocaine at the conclusion of the investigation. We therefore hold that the trial court did not err in denying Figueroa's motion to suppress on the ground that he was unlawfully arrested.

We overrule Figueroa's third issue.

### D.    Consent to Search Vehicle

Figueroa complains in his fourth issue that the weight of the credible evidence does not support the trial court's finding that he consented to a search of

20

his vehicle. Figueroa argues, first, that he did not consent at all and, alternatively, that any consent was involuntary because it followed Officer Kowis's show of force and therefore was a product of duress and coercion.

Under the Fourth Amendment, a search conducted without a warrant issued upon probable cause is "'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043 (1973) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967)). One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent, so long as the consent is voluntary. *Schneckloth*, 412 U.S. at 219–23, 93 S. Ct. at 2043−45. The validity of a consent to search is a question of fact to be determined from all the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 40, 117 S. Ct. 417, 421 (1996); *Maxwell v. State,* 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). The consent must "not be coerced, by explicit or implicit means, by implied threat or covert force." *Schneckloth*, 412 U.S. at 228, 93 S. Ct. at 2048; *see also Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991) ("The consent must be shown to be positive and unequivocal, and there must not be any duress or coercion."). By the same token, consent is not established by "showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina*, 391 U.S. 543, 548–49, 88 S. Ct. 1788, 1792 (1968). In

21

determining the meaning of a voluntary consent, two competing concerns must be accommodated—the legitimate need for such searches and the equally important requirement of assuring the absence of coercion. *Schneckloth*, 412 U.S. at 227, 93 S. Ct. at 2048. The State is required to prove the voluntariness of consent by clear and convincing evidence based on the totality of the circumstances. *See Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000).

We first address Figueroa's contention that he did not consent to the search of his vehicle. Again, this issue turns upon an evaluation of credibility and demeanor. At the suppression hearing, Officer Kowis testified that as Figueroa exited his vehicle, he volunteered, "[I]t's all I got. You can look. I only have one." Figueroa, however, denied making those statements and testified instead that, while he was being physically restrained and pressed against the vehicle by Kowis, a second officer entered the vehicle and retrieved the cocaine without asking Figueroa's permission. The trial court, however, found that Figueroa's testimony was not credible. As the sole trier of fact, the trial court was free to believe Kowis's testimony that Figueroa stated, "You can look." Because we must defer to the trial court's finding of historical fact, the inquiry becomes whether Figueroa's statement was the product of duress or coercion.

In making a determination of voluntariness, courts consider various factors, including whether the consenting person was in custody, whether he or she was

arrested at gunpoint, whether he or she had the option of refusing consent, the constitutional advice given to the accused, the length of detention, the repetitiveness of the questioning, and the use of physical punishment. *See Laney v. State*, 76 S.W.3d 524, 532 (Tex. App.—Houston [14th Dist.] 2002), *aff'd*, 117 S.W.3d 854 (Tex. Crim. App. 2003). Courts also consider the characteristics of the consenting person, including the person's youth, education, and intelligence. *Id.*; *see Reasor*, 12 S.W.3d at 818.

Figueroa alternatively argues that the totality of the circumstances show that he did not give consent voluntarily because he did not consent until after Officer Kowis (1) had approached the vehicle with gun drawn and exercised physical force by grabbing Figueroa from behind by his belt, pressing Figueroa against the vehicle, and handcuffing Figueroa. Again, however, the trial court did not find Figueroa's testimony credible. The trial court looked instead to Kowis's testimony, which established that when Kowis looked into the backseat of Figueroa's vehicle through an open window, he observed the cocaine on the floorboard and asked Figueroa to exit the vehicle. Figueroa, a man of forty-four years, volunteered his consent without Kowis having requested it or having said anything to Figueroa about the cocaine. When Figueroa gave his consent, Kowis was the only officer on the scene. Figueroa was not handcuffed or otherwise physically restrained. Kowis did not yell or act in an aggressive manner and did not recall having approached

Figueroa's vehicle with gun drawn. Kowis characterized Figueroa's demeanor at the scene as calm and cooperative.

The totality of the circumstances testified to by Officer Kowis do not establish that Figueroa's consent was the product of duress or coercion. Rather, the record supports the trial court's findings that Figueroa freely and voluntarily consented to the search of his vehicle at a time when he was not subject to custodial interrogation. We therefore conclude that the trial court did not err by denying Figueroa's motion to suppress evidence on the ground that the search of his vehicle was unlawful.

We overrule Figueroa's fourth issue.

**Failure to Assess Fine**

The State contends in a cross-point that a new punishment hearing is required because the trial court failed to assess a mandatory fine pursuant to section 481.112(f) of the Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(f) (West 2010).

In cases involving possession with intent to deliver at least 400 grams of a controlled substance, section 481.112(f) requires the assessment of both a term of confinement and a fine. *See id.*; *see also Ibarra v.* State, 177 S.W.3d 282, 284 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (recognizing that section 481.112(f) requires "both confinement *and* a fine"). Here, Figuero pleaded guilty

24

to possession with intent to deliver cocaine, a controlled substance, weighing at least 400 grams. The trial court sentenced him to a term of sixteen years' confinement but did not assess a fine. Because it is outside the minimum range of punishment, the trial court's sentence is unauthorized by law and is void. *Ibarra*, 177 S.W.3d at 284 (holding that trial court erred by "not assessing a fine as required for a conviction under section 481.112(f)"); *see Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003) ("A sentence that is outside the maximum or minimum range of punishment is unauthorized by law and therefore illegal."); *see also Ex parte Sims*, 868 S.W.2d 803, 804 (Tex. Crim. App. 1997) (noting that sentence outside statutory limits is void, and void sentence cannot be waived), *overruled on other grounds by Ex parte McJunkins*, 954 S.W.2d 39, 41 (Tex. Crim. App. 1997).

This Court has no authority to reform a void sentence by adding a punishment of any amount, "even in the interest of judicial economy and fairness or even if the addition is de minimis." *Ibarra*, 177 S.W.3d at 284 (citing *Scott v. State*, 988 S.W.2d 947, 948 (Tex. App.—Houston [1st Dist.] 1999, no pet.) and *Reed v. State*, 795 S.W.2d 19, 19–21 (Tex. App.—Houston [1st Dist.] 1990, no pet.)). The only remedy is a new punishment hearing. *See* TEX. CODE CRIM. PROC. ANN. art. 44.29(b) (West Supp. 2012); *Ibarra*, 177 S.W.3d at 284; *Scott*, 988 S.W.2d at 948.

We sustain the State's cross-point.

## Conclusion

We affirm that part of the trial court's judgment finding Figueroa guilty of possession with intent to deliver a controlled substance weighing at least 400 grams. Because we have determined that the trial court erred by failing to assess a fine in addition to a period of incarceration, however, we reverse that portion of the judgment assessing punishment and remand the case for a new punishment hearing pursuant to Article 44.29(b) of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 44.29(b) (West 2008); *Scott*, 988 S.W.2d at 948.


Harvey Brown
Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Do Not Publish.   TEX. R. APP. P. 47.2(b).

26